(No. 13927.—Decree affirmed.)

EDWIN J. BRACH, Appellant, *vs.* DEFORREST A. MATTESON, Appellee.

*Opinion filed June 22, 1921.*

1. SPECIFIC PERFORMANCE—*burden is on complainant to prove his performance or offer to perform.* In a suit for specific performance the general burden of proof rests on the complainant, and he must prove not only the existence of the contract and its terms, but must show a full and complete performance on his part or an offer to perform.

2. SAME—*a contract must be unambiguous and clearly proved before it will be specifically enforced.* A contract will not be specifically enforced unless the terms are clear, certain and unambiguous and either admitted by the pleadings or proved with a reasonable degree of certainty.

3. SAME—*the offer must be accepted substantially as made.* In order that there may be a meeting of the minds of the parties, which is essential to the formation of a contract, the acceptance must conform exactly to the offer, and if it contains new conditions there is no contract.

4. SAME—*offer must be accepted before it is withdrawn.* A proposition must be accepted before it is withdrawn or it becomes inoperative.

5. SAME—*contract is not established where by his act the offerer prevents an acceptance.* As there can be no contract without an offer and acceptance, the fact that the offerer by evasion prevents an acceptance of his offer will not cause a contractual relation to be established.

6. SAME—*when terms of acceptance as to taxes, insurance and expenses may be considered as a substantial variation from offer.* In a suit to enforce the performance of an alleged contract to convey real property the maxim *de minimis non curat lex* cannot

be relied upon to avoid a variation between the acceptance and the offer in the terms as to the taxes, insurance and other expenses, where the complainant offers no proof as to the amount of the difference in the terms, as the court cannot hold, without proof, that the difference is so small that the maxim will apply.

7. SAME—*when an offer is not accepted within time to make contract.* An offer to sell real estate, which is expressly stated to be open forty-eight hours for written acceptance, is not accepted within the required time where, though the offerer was absent from the city, the purchaser did·not leave the acceptance at his office but merely requested his stenographer to inform him of the acceptance and where to call for the paper, and the offerer, on his return the following day, had the right to decline to carry out the contract on the ground that his proposition was not accepted in time.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

PETIT, CUMMINGS & COLSON, (H. G. COLSON, of counsel,) for appellant.

CHARLES V. BARRETT, and JOHN F. TYRRELL, (EDWARD A. PRINDIVILLE, of counsel,) for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

A bill for specific performance was filed by appellant, Brach, against appellee, Matteson, praying for the enforcement of a contract for the sale of certain real estate in Chicago. After a hearing before the chancellor the bill was dismissed for want of equity at appellant's costs. An appeal was thereupon taken to this court.

It appears from the record that George W. Walker, a Chicago real estate broker, had had various dealings in recent years with the appellee; that James A. Savage was an employee in Walker's real estate office and that James G. Upton had also been employed in various real estate transactions by Walker; that appellant is a brother-in-law of Upton; that appellee was the owner of an apartment building at 4215-4231 Broadway, in Chicago, and that having

heard through Walker's office that appellee had such apartment building for sale, Savage and Upton called on him at his office in the Unity building, in Chicago, and talked with him about the purchase of said building; that they talked with appellee for some hours on December 15, 1919, with reference to negotiating for the sale of this property; that late in the afternoon of that day, in his office, appellee wrote out a statement in triplicate addressed to Savage, Walker and Upton, stating, among other things, that he would take $162,500 for the apartment building on the following terms: "Thirty thousand ($30,000) dollars cash on delivery of the deed; thirty-six thousand five hundred ($36,500) dollars second mortgage, payable four hundred ($400) dollars or more a month and interest until October 18, 1921, when the remaining balance of said second mortgage becomes due, and to the first mortgage ninety-six thousand, ($96,000,) payable six thousand ($6000) dollars November 18, 1920, and ninety thousand ($90,000) dollars payable November 18, 1921. This offer is void if not accepted in writing within forty-eight (48) hours from date hereof. Taxes, interest, insurance and all other expenses to be prorated on delivery of the deed." The record further shows that appellee gave one copy of this proposal to Savage and one to Upton, and during the conversation it appears that he stated a real estate contract would have to be prepared including some of the minor details that were not contained in the proposition. Savage and Upton testified that there was also talk between the parties with reference to the commission and the amount of earnest money to be paid, and that it was agreed the contract, with the earnest money, might be left with the Chicago Title and Trust Company. Appellee denies the latter part of this conversation, stating that the only thing he said was that some of the details would have to be provided for in a written contract. The next day Savage and Upton presented this proposal to appellant with a contract prepared apparently by them on the

ordinary real estate board printed form often used in Chicago, and appellant signed the same. This real estate contract provided, among other things, that appellee was to convey to the purchaser the property in question, with a good and merchantable title, by warranty deed, with release of dower and homestead, and also "subject to all taxes and assessments levied after the year 1919," and provided for a deposit of $5000 earnest money with the Chicago Title and Trust Company, and the further payment of $25,000 provided the title was found good or accepted by the purchaser. Upton wrote on one of the copies of appellee's proposal, "Accepted by E. J. Brach, 7:30 P. M., 12/16/19.— J. G. Upton." Upton and Savage went to appellee's office in the Unity building the following day and were informed by his stenographer that he was absent that day in Janesville, Wisconsin, and would not return until that night or the next morning. They showed her the acceptance, appellee's proposal with its notation and the proposed contract, and also appellant's check for the $5000 earnest money, and told her to inform appellee that they would deposit the papers with the Chicago Title and Trust Company, to be called for by appellee. The next day Upton and Savage called on appellee and told him of the acceptance being with the Chicago Title and Trust Company along with the earnest money. Appellee had already been informed by his stenographer that they had shown her the acceptance of the offer the day before. Upton and Savage testified that during the talk that next morning in appellee's office he said he could not carry out the contract; that he had "welched" on the deal. Appellee testified that he told them he could not carry out the contract because the acceptance was made too late; that he did not say he had welched but stated that for personal reasons he did not want to stand by his offer, in addition to the fact that the acceptance had come too late. It appears from Walker's testimony that in the transactions with which he was familiar or had negotiated

on appellee's behalf in previous years, the contract for the purchase or sale of the property, along with the earnest money, had been left with the broker, and at one time with the Chicago Title and Trust Company.

There is no evidence in the record tending to show that there was any talk when the proposition was given to Upton and Savage by appellee as to where the acceptance of the offer was to be left. Counsel for both sides seem to agree that if the acceptance had been left with appellee at his office in Chicago it would have been a compliance with appellee's written offer, and counsel for appellee claim that the offer was not accepted because the written acceptance was not left at his office within the time limit,—forty-eight hours,—and that leaving the acceptance, with the written contract and the earnest money, with the Chicago Title and Trust Company. was not in accordance with the written offer and therefore not binding. They also contend that the contract signed by appellant changed some of the terms of the offer, both with reference to being accepted with a good and merchantable title and with respect to being subject to taxes, interest, insurance, etc., without any provisions as to prorating, while counsel for appellant argue that the acceptance was in substantial compliance with the offer as to the payment of taxes, insurance and other expenses, and that the provision as to a good and merchantable title, under the authorities, (27 R. C. L. 480; 39 Cyc. 1442;) would be considered as an understood agreement, and could be enforced under the law if the offer had been accepted in every way, unconditionally, within the forty-eight hours. They also argue that the papers having been presented at appellee's office within the forty-eight hours such action was a substantial compliance with the offer, and that the evidence tends to show that it was quite customary to leave written acceptances and the earnest money with the Chicago Title and Trust Company, and that the evidence also tends to show that it was the understanding that the papers should

be so left, in the oral conversation between the parties at the time the written offer was handed to Savage and Upton.

In suits for specific performance the general burden of proof rests on the complainant. He must prove not only the existence of the contract and its terms, but must show a full and complete performance on his part or an offer of such performance. (25 R. C. L. 335.) A contract will not be enforced unless the terms are clear, certain and unambiguous and either admitted by the pleadings or proven with a reasonable degree of certainty. (*Dreiske* v. *Eisendrath Co.* 214 Ill. 199.) In order that there may be a meeting of the minds, which is essential to the formation of a contract, the acceptance of the offer must be substantially as made. (6 R. C. L. 608; Page on Contracts,—2d ed.—sec. 191.) If the offer requires an acceptance to be made in writing no other form of acceptance can be made. (Page on Contracts,—2d ed.—sec. 185.) A proposition must be accepted before it is withdrawn or it becomes inoperative. (6 R. C. L. 609.) An acceptance must conform exactly to the offer. If it contains new conditions there is no contract. (*Anglo-American Provision Co.* v. *Prentiss,* 157 Ill. 506; *Davis* v. *Fidelity Fire Ins. Co.* 208 id. 375; *Scott* v. *Fowler,* 227 id. 104.) Since there can be no contract without an offer and acceptance, the fact that the offerer by evasion prevents an acceptance of his offer will not cause a contractual relation to be established. (13 Corpus Juris, 294; see, however, Page on Contracts,—2d ed.—sec. 186.)

It is clear from the contract signed by appellant and deposited as above stated, that his acceptance did not comply with the offer as to the payment of taxes, insurance and other expenses. This seems to be conceded by counsel for appellant, but they argue that the difference was not substantial and ought not to prevent the enforcement of the contract, relying on the maxim *de minimis non curat lex.* There is no proof here as to the amount of the difference

between what would be the ordinary or actual taxes of 1919 and the taxes prorated for the twelve or more days in the last part of December, 1919. As stated, the burden of proof was on appellant, and he having made no proof as to what difference in the payment of taxes, insurance and other expenses would be effected by this change in the contract, the court cannot hold, without proof, that the difference would be so small that the maxim *de minimis* would control.

Then, too, there is no evidence tending to show that appellant left any writing of any kind within forty-eight hours at appellee's office in Chicago, or left any such writing with him or any of his agents. Had the written acceptance been left with the clerk who was apparently in charge of his office in Chicago a different situation might be presented. Counsel for appellant suggest in their brief that it was strange that appellee left the city on the day when the offer might have been accepted and when they went to his office to find him, but there is no proof in the record or attempted to be offered that appellee left the city to prevent the written acceptance being presented to him according to his written offer. On the facts in this record, under the authorities already cited, we conclude that appellant did not bring himself within the provisions of the written offer as to giving the written acceptance to appellee within forty-eight hours, and that the acceptance he claims to have made did not come within the provisions of the offer as to the payment of taxes, insurance and other expenses.

In view of the conclusions reached on this point we deem it unnecessary to consider or decide the other questions raised in the briefs.

The decree of the superior court must be affirmed.

*Decree affirmed.*