Ellis Realty *et al.*, Plaintiffs-Appellees, *v.* Marión Chapelski, Defendant-Appellant.

(No. 60766;

First District (1st Division)—May 19, 1975.

Alan I. Lapping, of Chicago (Harry G. Fins, of counsel), for appellant.

Carlins & Kamensky, of Chicago, for appellees.

Mr. JUSTICE SIMON delivered the opinion of the court:

Plaintiffs are real estate brokers who cooperated in finding a purchaser for property owned by the defendant. The suit is for a real estate broker's commission. After a bench trial, judgment was entered in favor of plaintiffs for the amount claimed as the commission owing, and defendant appeals.

The testimony of the plaintiffs was that defendant, a builder, asked plaintiff Ellis to find a buyer for a building defendant said he owned. After giving Ellis details of the income and expenses of the property, lease expirations, the mortgage balance and payments on the mortgage, defendant told Ellis he wanted $225,000 after payment of brokerage commissions. The brokerage agreement was not reduced to writing, but the parties orally agreed that the minimum price would be $237,500, so that the broker would receive a commission calculated at the then prevailing rate of the Chicago Real Estate Board. For the next 18 months the plaintiffs cooperated in seeking a buyer, advertised the property, showed the building, met periodically with defendant to discuss progress, and on several occasions introduced prospective purchasers to defendant. None of these were willing to meet the price demanded.

Plaintiffs, according to their testimony, then found a prospective purchaser willing to pay the price, provided defendant would give him a second mortgage in the amount of $30,000 at 7% interest. Defendant read the written offer of the proposed purchaser and informed plaintiffs he would accept it provided the interest rate on the second mortgage was raised to 8%. The prospect agreed, but when the amended offer was returned for defendant's signature he refused to proceed with the transaction.

The prospective purchaser testified that in the company of plaintiffs he met the defendant at the building in question and the defendant

showed him through the basement of the building. He also testified that he signed an offer to purchase the building and identified the offer which he had signed. He explained that the offer called for a second mortgage with interest at 7%, but later when he was told that the rate of interest for the second mortgage had to be raised, he agreed to increase it to 8% and so indicated in writing on the offer to purchase. Finally, he testified that one of the plaintiffs told him that the reason he did not get the building was that defendant had changed his mind and defendant's lawyer told him not to sell it.

The defendant testified without objection that title to the real estate was held by a land trustee and that the beneficial interest had been assigned to a mortgagee.

The defendant in his testimony also denied ever setting a price at which plaintiff Ellis could offer the building for sale. However, he conceded that he told Ellis that if he produced a buyer who offered terms satisfactory to him, Ellis could sell the building. Defendant also denied that he ever discussed the second mortgage with plaintiffs, but at the same time testified that he told plaintiffs that a second mortgage would be impossible. Finally, defendant testified that he at no time told the plaintiffs that the offer of the prospective purchaser either as originally presented or as modified would be acceptable to him.

Defendant's position on appeal rests entirely on his claim that the defendant was not the legal owner of the property, but rather that he and his wife were only beneficial owners, that failure to obtain consent of the first mortgagee to assignment of the mortgage to the purchaser prevents recovery, and that the judgment should be reversed because of certain procedural omissions.

■■ One of defendant's principal arguments on appeal is that only the land trustee, as distinguished from the defendant as a beneficial owner, could agree to the sale of the real estate and defendant's lack of legal capacity to contract to sell the trust property prevents recovery of the brokerage commission. The line of Illinois cases[1] dealing with the circumstances under which a beneficiary of a land trust may be bound by a land sale contract or a lease, some of which are relied on by the defendant, is not relevant to disposition of this appeal. Because recovery of a real estate brokerage commission is not dependent upon consumma-

---

[1] See *Brannen v. La Salle National Bank* (1959), 18 Ill.2d 116, 163 N.E.2d 476; *Burns v. Epstein* (1952), 413 Ill. 476, 109 N.E.2d 774; *Kortenhof v. Messick* (1974), 18 Ill.App.3d 1, 309 N.E.2d 368; *House of Realty, Inc. v. Ziff* (1972), 9 Ill.App.3d 419, 292 N.E.2d 71; *Celeste Italian Foods, Inc. v. Choyce* (1972), 9 Ill.App.3d 361, 292 N.E.2d 177; *Madigan v. Buehr* (1970), 125 Ill.App.2d 8, 260 N.E.2d 431; *Schneider v. Pioneer Trust & Savings Bank* (1960), 26 Ill.App.2d 463, 168 N.E.2d 808.

tion of the proposed sale, it is unnecessary for this court to decide whether the defendant and the trustee would be bound by the contract had defendant affixed his signature to it. A seller engages a real estate broker to find a purchaser, and this is the extent of the broker's undertaking. (*Carter v. Webster* (1875), 79 Ill. 435.) A real estate broker earns his commission when he produces a purchaser who is ready, willing and able to meet his principal's terms. (*Garrett v. Babb* (1975), 24 Ill.App.3d 941, 322 N.E.2d 217; *Sharkey v. Snow* (1973), 13 Ill.App.3d 448, 300 N.E.2d 279.) The broker can perform the services requested of him without affecting title to or possession of the property being offered for sale. Consequently, liability for payment of the commission does not depend on whether the principal has authority to enter into a binding contract to sell or to convey The land trustee's participation is necessary to convey the trust property and under some circumstances may be required to execute a binding contract of sale, but the trustee's approval is not required to engage the services of a real estate broker or to authorize a broker to find a purchaser at a specified price.

Defendant's next contention is that the allegation of the complaint that the defendant was the owner of the property was not established since the evidence showed that title was in a land trustee and defendant was only a beneficial owner. The defendant held himself out to the plaintiffs as the owner; there is testimony that he engaged the services of plaintiff Ellis; and he was a beneficial owner. Plaintiffs are not suing to enforce an interest or right in the real estate. On the contrary, the only recovery they seek is against the defendant who requested them to render personal services to him either as the owner or as a beneficial owner. The allegation that defendant was the owner was accurate and proper for the purposes of the complaint since as concluded above it is not necessary to establish that a principal has authority to sell in order to hold that he has incurred liability to a real estate broker. It is, therefore, not material to this cause of action for the complaint to distinguish between legal and equitable ownership.

■■ Defendant also contends that the land trustee as legal owner as well as defendant's wife as a beneficial owner were necessary parties to this action. A person is not necessary to an action if the judgment would not affect his right or interest. (*Oglesby v. Springfield Marine Bank* (1944), 385 Ill. 414, 52 N.E.2d 1000; *Theodorou v. Community Builders, Inc.* (1972), 6 Ill.App.3d 277, 285 N.E.2d 474.) This action is on a contract between plaintiffs and defendant for personal services and not a contract between a purchaser and a seller of real estate. Plaintiffs' claim does not affect title to or possession of the real estate. Nor does it create any liability or obligation on the part of the land trustee. Because the judgment

does not affect the right or interest of the land trustee, it is not a necessary party.

■■ Accepting the assertion in defendant's brief, even though it has no support in the record, that his wife was a beneficial owner of the real estate, the judgment against the defendant neither affects her beneficial interest, nor burdens her with any liability. (*Heidelmeier v. Hecht* (1908), 145 Ill.App. 116.) For the same reason, therefore, that the land trustee was not a necessary party, neither was defendant's wife.

■■ An overriding consideration in reaching the conclusion that plaintiffs should not be deprived of recovery because of the arguments advanced by defendant is the clear proof that defendant at all times held himself out to be the owner of the real estate for which plaintiffs claim they found a purchaser at his request. Defendant's failure to inform the plaintiffs that he was a beneficial instead of a legal owner or that his wife was also a beneficial owner should not work to the advantage of the defendant. Under the conclusions stated above, these disclosures were not necessary; but if the defendant is correct when he urges that the identity of the owners is material, ownership should have been disclosed by the defendant. There is no need for a real estate broker to search title to find out who the owner is before he undertakes to locate a purchaser for real estate. It was entirely proper and reasonable for plaintiffs to rely on defendant's representation that he was the owner rather than to search title to make sure defendant was telling them the truth before proceeding to locate a purchaser.

Defendant disputes whether plaintiffs produced a ready, willing and able buyer because the offer to purchase was conditioned on the mortgagee's consent to assignment of the mortgage and such consent was not obtained. The written offer, which the testimony of plaintiffs established was read and approved by the defendant except for the interest rate on the second mortgage, anticipated that the mortgagee might withhold consent to the assignment of the mortgage. It provided that in such event the purchaser was obligated to take title subject to the first mortgage and agreed to hold seller harmless from all further liability on the mortgage.[2] The offer to purchase therefore was not conditioned upon consent of the mortgagee to the assignment of the security instrument.

■■ One of the procedural omissions defendant urges is that reversal

---

[2] The offer provided: "* * * The parties hereto agree to sign a written assumption agreement with and in a form satisfactory to the legal holder of the mortgage, any expense to be paid by Purchaser. In the event Purchaser does not secure permission of said legal holder of the mortgage to assume said mortgage on or before 30 days from the date hereof, Purchaser agrees to take title subject to the mortgage and shall, by written instrument, in form satisfactory to Seller, agree to save and hold harmless Seller from all further liability thereon * * *."

is required by the failure of the trial court to rule on his motion to dismiss or to require the defendant to answer the complaint. The procedural history of this case reveals defendant's indifference and inattention to the pleadings.[3] Following his opening statement, the court propounded the following inquiry to defendant's trial counsel: "Your motion to dismiss was therefore heard?" Defendant replied that it was never heard, but the case proceeded. Defendant neither asked the trial judge to rule on the motion, nor objected to going to trial without the motion having been decided. Rule 2.3 of the Rules of the Circuit Court of Cook County provides:

> "The burden of calling for hearing any motion previously filed is on the party making the motion. If any such motion is not called for hearing within 90 days from the date it is filed, the court may enter an order overruling or denying the motion by reason of the delay."

In this case, more than 3 years intervened between the filing of the motion to dismiss and the trial, with defendant never asking that the motion be heard. Defendant has not been prejudiced and should not gain an advantage from his own lack of diligence. If properly preserved, the same legal theories raised by the motion to dismiss could have been urged on appeal. Under these circumstances, the trial court did not err in proceeding to trial without ruling on the motion to dismiss.

Defendant also failed to file an answer to the complaint. He urges as another procedural omission that by proceeding to trial plaintiffs waived the filing of an answer, and that any variation between the allegations in the complaint and the proof received in evidence are fatal to plaintiffs' action. There is no such rule of procedure. In his opening statement, defendant's attorney denied the material allegations of the complaint, and the case was tried as if all material allegations had been denied. In any event, defendant has not pointed to, and this court does not find, any essential element of proof of plaintiffs' claim which is lacking.

The defendant attached to the briefs he filed with this court copies of three documents: one, a recorded deed of the property to the land trustee, the second, a copy of a financing statement filed with the Secretary

---

[3] March 23, 1971 complaint filed; May 7, 1971 order entered vacating all defaults on defendant's motion; May 10, 1971 defendant filed appearance and motion to dismiss; May 8, 1972 DWP; May 26, 1972 DWP vacated on plaintiffs' motion and defendant defaulted, proveup ordered for June 8, 1972; June 27, 1972 default vacated on defendant's motion, leave to answer granted until July 14, 1972 and cause continued until November 1, 1972; April 2, 1973 DWP; May 15, 1973 DWP vacated on plaintiffs' motion, set for trial on September 10, 1973; continued until November 19, 1973; continued until December 17, 1973; continued until February 14, 1974; continued until April 17, 1974; continued until May 21, 1974; May 22, 1974 judgment entered.

of State showing assignment of the beneficial interest in the land trust to the mortgagee and, third, a copy of an unrecorded trust agreement showing that the defendant and his wife were beneficiaries and that each acting alone had the power to direct the land trustee. Defendant urges this court to take judicial notice of the first two of these documents as recorded instruments contained in public records even though they were not offered in evidence at the trial and no proper foundation for them appears in the record. Because plaintiffs in their brief called attention to its absence from the record, he also asks this court to take notice of the trust agreement even though it is neither recorded nor filed. The first two documents establish no more than defendant's unchallenged testimony which this court accepts as an established fact that title to the real estate was held by a land trustee and he was the beneficial owner; it is unnecessary, therefore, to decide whether these documents should be noticed. The third document is not properly before the court, but in any event it prejudices the defendant more than it helps him for it establishes that acting alone and without his wife's approval he had the power to direct the land trustee to sell the property. With such broad power of direction in the defendant, his wife's consent was not necessary to sell the property or engage a broker, and his unwillingness to exercise the authority these documents gave him to direct the trustee to accept the purchaser's offer should not excuse his obligation to compensate the broker.

For the reasons set forth above, the judgment is affirmed.

Affirmed.

GOLDBERG and EGAN, JJ., concur.