GILL CUSTOM HOUSE, INC., *et al.*, Plaintiffs-Appellees, *v.* GASLIGHT CLUB, INC., Defendant-Appellant.

(No. 59617; 

First District (1st Division)—April 7, 1975.

*Supplemental opinion upon denial of rehearing June 16, 1975.*

Fein and Hanfling, of Chicago (Norman Hanfling, of counsel), for appellant.

Angelo Ruggiero, of Chicago, for appellees.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

After trial by the court, Gill Custom House, Inc. (plaintiff), obtained a judgment against the Chicago Gaslight Club, Inc. (defendant), sued herein as Gaslight Club, Inc., for $7012.56. Defendant appeals.

Defendant contends here that the judgment is against the weight of the evidence and that plaintiff was estopped from asserting its claim because of reliance by defendant upon plaintiff's actions. Plaintiff contends that the judgment was not against the manifest weight of the evidence and that this court may not consider a new theory on appeal when the point was not raised in the trial court. Since we are of the opinion that the issue here is largely factual, a summary of the evidence is essential.

Plaintiff is in the business of installing sound equipment and public address systems. Defendant operates a place of entertainment in Chicago. During September of 1969, plaintiff and a man named John Lovelace, associated with Acoustron Corporation (Acoustron), a manufacturer of audio equipment, operating a plant in Texas, considered the possibility of installation by plaintiff of an audio and public address system at defendant's place of business. Plaintiff spoke to an agent of defendant named Charles Lange regarding the installation. No agreement was reached.

Shortly before Christmas of 1969, Lange communicated with John Gill, of plaintiff corporation, and additional discussions were held regarding installation of the equipment for defendant. Gill and Lange, acting for their respective companies, entered into a verbal agreement for installa-

tion of the work with the understanding that it be completed in time for New Year's Eve. Plaintiff commenced work the day after Christmas. Plaintiff prepared a written proposal dated December 26, 1969, a copy of which was forwarded by plaintiff to defendant. This document is headed "Agreement." It describes in some detail the equipment to be installed for defendant. The total price of the installation is stated as $7153. Payment was to be made one-third as a deposit, one-third upon completion of installation and the balance 30 days after completion. There is a space provided for signature by John T. Gill and also a space with the words "Gaslight Club" and a place for signature, title of signatory and date. Gill testified that he mailed this agreement to defendant. The record does not show that the agreement was ever executed by defendant or by plaintiff. Gill further testified that he requested the agreement from Mr. Lange but that Lange "* * * didn't know exactly what happened to it."

The installation was completed in time. John Gill testified that he spoke to Mr. Lange on the telephone on or about January 10, 1970, and Lange told him that he had a special manner in which payment would be made. By the end of January 1970, Gill asked Lange how the payment was going to be made. Lange told him to bill Acoustron and that Acoustron would pay. Plaintiff corporation then sent a bill to Acoustron for $6270.

This bill, or invoice, is dated February 23, 1969; it is addressed solely to Acoustron and has upon it the name of Mr. Lovelace. It is undisputed that no other invoice, or bill, was ever sent by plaintiff to defendant or to any person other than Acoustron. The parties agree that, although the invoice is dated February 23, 1969, this date is erroneous and it was actually prepared and sent on or about February 23, 1970.

On February 10, 1970, Lovelace wrote a letter to a vice-president of Acoustron at its office in Texas. This letter described certain equipment "included in the Gill Custom House original quote" in the total amount of $302 which Lovelace could not find at defendant's place of business. The letter also detailed certain equipment placed for defendant, at the request of Lange, not included in the Gill quote; total $491. A short accounting is set forth in the letter showing a total due to Acoustron from defendant in the amount of $6202 and a total of $6802 due from Acoustron to plaintiff. Copies of this letter were sent to defendant and also to John Gill. Gill first testified that he did not recall receiving a copy of this communication. Thereafter, after portions of his discovery deposition had been read to him, he conceded that he had received it.

On March 10, 1970, defendant made an initial payment of $2184.33 directly to Acoustron. Shortly thereafter Gill spoke to Lange and told him

that no payment had been made to him. Lange stated that he had already made a payment to Acoustron. Another payment was made by defendant to Acoustron on May 12, 1970, also in the amount of $2184.33. Thereafter Gill spoke to Lange and Lange told him that defendant had made the second payment. Lange gave him the name of the president of Acoustron and Gill instructed his lawyer to write to Acoustron about the account. On June 5, 1970, the lawyer sent a letter demanding payment from Acoustron. Prior to that date, and on May 22, 1970, the president of Acoustron wrote to plaintiff "concerning the status of the account owed by Acoustron to your company." This letter stated the reason for failure of Acoustron to pay the moneys due plaintiff and stated that within 3 or 4 weeks the cash situation of Acoustron would ease so as to enable full payment of $7153 to plaintiff. The letter stated that the president of Acoustron guaranteed that the account would be fully satisfied no later than August 10, but that earlier payment would be attempted.

On October 8, 1970, counsel for plaintiff wrote a letter to counsel for defendant stating that plaintiff had made the installation in accordance with an agreement between Acoustron and Lange and that the amount due and owing to plaintiff had not been paid, although defendant had paid two-thirds of the account to Acoustron. The letter called upon defendant to make some arrangements for payment upon an equitable basis. This letter referred to a previous conversation in which the attorneys had discussed possible bankruptcy proceedings involving Acoustron.

The evidence also shows that Burton Browne Advertising had rendered services to Acoustron on various dates from December 31, 1969, to and including May 18, 1970. Acoustron owed Burton Browne Advertising a sum exceeding the entire amount claimed by plaintiff. On September 2, 1970, Burton Browne Advertising assigned a portion of this account in the sum of $2285 to defendant. It appears from response made by defendant's counsel to direct inquiries from the court during trial, that Burton Browne is one of the general partners in Burton Browne Advertising and is also president of defendant corporation and he has no connection whatsoever with Acoustron. Defendant then, on November 2, 1970, issued its check to Burton Browne Advertising for the amount of $2285 and on that date defendant notified Acoustron by letter that the account due from defendant to Acoustron had been credited to the extent of $2285.

On July 9, 1970, plaintiff filed suit against Acoustron in the circuit court of Cook County. The complaint alleged that on May 22, 1970, the parties had examined their claims and had arrived at an account stated with balance due plaintiff in the amount of $7153. A copy of the letter to plaintiff from Acoustron, dated May 22, 1970, concerning this account was appended to the complaint. Defendant was not made a party to the suit.

On November 25, 1970, plaintiff filed an amended complaint. Count I *repeated the allegations of the account stated between plaintiff and Acoustron, on May 22, 1970, in the amount of $7153. Count II alleged* that plaintiff agreed to and did install a sound system on the premises of defendant which defendant accepted. It alleged that defendant has been benefited and has been unjustly enriched by installation of the sound system for which plaintiff has not received payment. Plaintiffs prayed judgment in the amount of $7153.

On June 1, 1971, plaintiff filed a second amended complaint upon which the cause was tried. This pleading contained allegations only concerning defendant and did not mention Acoustron. It alleged that the parties had entered into a contract on December 26, 1969, pursuant to which an agreement was submitted to defendant which had been signed by plaintiff. The total price was $7153, which defendant has refused to pay upon demand. Count II alleged that plaintiff agreed to and did install the sound system on the premises of defendant and that this installation was accepted by defendant. It alleged that defendant has been benefited by this and accordingly unjustly enriched and that plaintiff had not received payment of $7153.

In its answer, defendant denied that any agreement had been submitted to it and denied it had signed the agreement. It admitted the installation of the sound system but denied the existence of any agreement between the parties. For an affirmative defense, defendant alleged that it had contracted with Acoustron for purchase and installation of the sound system; plaintiff had entered into an agreement with Acoustron for installation of the equipment for the account of Acoustron and plaintiff was to be fully compensated by Acoustron for its work and materials, if any were supplied. Defendant alleged that plaintiff has sought to collect the amount due from Acoustron and had filed its complaint against that company. Defendant further alleged that Acoustron had filed proceedings in bankruptcy in the United States Court in Texas. It alleged that defendant did not enter into any agreement for payment to plaintiff but that the agreemen existed solely between plaintiff and Acoustron.

The able trial judge commented in some detail upon the evidence prior to the entry of judgment. He pointed out that plaintiff's testimony was not refuted by other evidence. The trial court felt that plaintiff may have been naive in requesting payment from Acoustron; yet, in effect, that it would be highly inequitable for plaintiff not to receive any payment for the service rendered.

■■ It is correct that these are weighty considerations. In addition, it was the function of the trial court to determine the credibility of the witnesses and to resolve conflicts in the evidence and its finding, when

based upon these considerations, should be set aside only when the result reached is manifestly against the weight of the evidence. *Reese v. Melahn,* 53 Ill.2d 508, 512, 513, 292 N.E.2d 375.

Upon careful review of all the evidence, however, we are of the opinion that this record presents not a question of credibility of witnesses, or conflicting evidence, but uncontradicted evidence which makes it necessary for us to reverse the judgment. It is correct that no witness testified contrary to Gill. Defendant did not produce its agent Lange who had originally handled the matter with plaintiff. Acoustron was not a party to the trial and presented no evidence. However, plaintiff's own version of the transaction showed that Acoustron was involved in the matter from its very inception and proves affirmatively the nonliability of defendant upon any express contractual basis.

Gill testified generally that he prepared a contract and sent it to defendant at or about the time that installation commenced. The evidence is quite doubtful as to whether defendant actually received the contract. Gill testified in a rather vague manner that he had requested return of the contract from Lange but that Lange replied that he did not know what had happened to it. Plaintiff's second amended complaint alleged that plaintiff had signed the contract but the copy of the agreement appended to the pleading has no signature by either party. The evidence thus shows that the contract was never executed.

Gill also testified that he had many conversations with Mr. Lange after the installation was completed by plaintiff. As regards payment, Lange told him to bill Acoustron and this he proceeded to do. The record thus shows that plaintiff never at any time acted in accordance with the proposed written contract. The agreement called for a deposit of one-third, with one-third payable upon completion of the installation and the balance in 30 days. There is no evidence that plaintiff ever demanded this type of performance from defendant. Plaintiff sent no invoice or bill to any person for the installation until February 23, 1970, when he sent an invoice to Acoustron. Plaintiff never at any time sent any bill to defendant or made written demand for payment by defendant until October 8, 1970. In fact, when plaintiff first filed suit on July 9, 1970, the only party defendant was Acoustron and plaintiff alleged an account stated.

By Gill's own testimony, plaintiff was aware at all times that payments were actually made on account of the debt by defendant to Acoustron. Plaintiff received a copy of a letter sent from Acoustron to its home office in Houston on February 10, 1970, stating clearly that payment was to be made by defendant to Acoustron and thereafter by Acoustron to plaintiff. In May of 1970, plaintiff received a letter from Acoustron stating its financial difficulties and making definite promises for payment to plaintiff

in full. Gill testified that Lange informed him on unspecified dates about the payments made by defendant to Acoustron. He stated that he told Lange that plaintiff had received no payment from Acoustron. However, the only resulting action taken by plaintiff was a letter sent by plaintiff's attorney to counsel for defendant on October 8, 1970, after the first two payments had been made by defendant. This letter merely called upon defendant for some arrangement on an equitable basis. Even plaintiff's first amended complaint filed against defendant on November 25, 1970, after final payment had been made, sought to assert a claim against defendant for unjust enrichment but is completely bare of any allegation regarding any express contractual arrangement between plaintiff and defendant. This conduct by plaintiff cannot be explained away on the simple ground of naivete. On the contrary, the testimony and plaintiff's own conduct completely negate any claim of express contractual relationship between plaintiff and defendant.

Plaintiff urges that defendant is attempting to raise the theory of estoppel for the first time in this court. It is correct that defenses not raised in the trial court are waived and may not be raised for the first time in a reviewing court. (*Shaw v. Lorenz*, 42 Ill.2d 246, 248, 246 N.E.2d 285.) It is also extremely doubtful as to whether the allegations of defendant's affirmative defense to plaintiff's second amended complaint are sufficient to raise an issue of equitable estoppel. However, in our opinion, the matter does not rest upon a technical question of estoppel. We find instead a complete failure of plaintiff's proof as regards the existence of any express contractual agreement with defendant. Instead, all of the proof points unerringly to the absence or nonexistence of a formal agreement between plaintiff and defendant for payment by the latter.

■■ The trial court recognized this in stating his conclusions because he rested his judgment for plaintiff entirely upon an equitable theory of unjust enrichment. It will be remembered that the second count in plaintiff's second amended complaint against defendant depends completely upon a theory of unjust enrichment. Equitable considerations have led courts for many years to grant quasi-contractual relief. The basic principle here is that equity and good conscience should operate to prevent one person from retaining money, or its equivalent, which actually belongs to another. (See *Board of Highway Commissioners v. City of Bloomington*, 253 Ill. 164, 97 N.E. 280.) In the case before us, if the defendant had not made payment in full of the entire cost of the installation, the way would have appeared open for application of this equitable doctrine. But it is undisputed here that the full amount of the cost of the entire installation has been paid by the defendant. Defendant is clearly out of pocket for the full amount of the installation. In a situation of this type, in view

of the conduct of plaintiff from the inception of the transaction, it does not appear to be fair or equitable to require defendant in fact to make double payment for the installation.

■■ Plaintiff argues here, as it did in the trial court, that arguments may be made to question the bona fide nature of the final payment made pursuant to an assignment of account from the Burton Browne Company to defendant. However, it must be conceded that this contention is based only upon suspicion. The statement by defendant's counsel that one individual is president of the defendant corporation as well as a general partner in Burton Browne Advertising does not in and of itself show fraud. Plaintiff's contention here is one of conspiracy and fraud. But, the courts of Illinois have traditionally held that facts must be alleged with particularity to state a good cause of action for fraud. (*Atwood Vacuum Machine Co. v. Continental Casualty Co.*, 107 Ill.App.2d 248, 266, 246 N.E.2d 882.) None of the three complaints filed by plaintiff contains any allegation regarding the existence of fraud or the commission of fraudulent acts.

In addition, many cases have held "that fraud is never presumed but must be the subject of clear and convincing proof." (*Atlee Electric Co. v. Johnson Construction Co.*, 14 Ill.App.3d 716, 725, 303 N.E.2d 192 and cases there cited.) Far from containing proof of this type, this record shows that defendant's claim of payment is entirely legitimate as it is supported by canceled checks, an assignment of the account and other business documents apparently all issued in the usual course of defendant's business. The bona fide validity of these items was neither impeached nor attacked.

■■ In sum, it is our opinion that the equities here favor defendant and that it would be highly inequitable to require defendant to make double payment for the installation. Analysis indicates that plaintiff was far more responsible than defendant for any loss that plaintiff might have incurred.

The judgment appealed from is accordingly reversed.

Judgment reversed.

BURKE, P. J., and SIMON, J., concur.

### SUPPLEMENTAL OPINION

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Plaintiffs' petition for rehearing is first directed at the statement in paragraph 4 of our opinion: "The record does not show that the agreement was ever executed by defendant or by plaintiff." This statement had

reference to the testimony of plaintiff Gill regarding the written proposal dated December 26, 1969, which, he testified, he had forwarded to defendant. Plaintiff Gill's testimony in this regard appears shortly after the commencement of trial. Plaintiff Gill testified that he had prepared a letter directed to defendant together with a two-page agreement bearing space for signatures by plaintiff and defendant, all as described in paragraph 4 of the court's opinion. Gill testified that he mailed this material to defendant but did not testify that he signed the contract. It appears from examination of this exhibit that neither plaintiff nor defendant signed the contract thus identified by Gill. Consequently, in the context of plaintiff's own testimony, the statement in the opinion regarding lack of signatures on the contract is precisely correct.

The record does contain additional statements regarding another document which appears by comparison to be a copy of this contract without the covering letter. Although we did not advert to this additional material in our opinion, for reasons hereinafter stated, in view of the petition for rehearing we will do so now.

The last witness for the defense was one of the attorneys representing defendant. He was called in connection with the documents described in our opinion concerning payment by defendant to Burton Browne Advertising. There was considerable cross-examination of this witness as to events which transpired at the time he took the discovery deposition of John Gill of plaintiff corporation and of conversations that he had with Mr. Lange in preparation for this proceeding. Counsel for plaintiffs then, for the first time, produced the other document dated December 26, 1969, without the covering letter. The witness testified that he was not sure whether he had ever seen the document before, but he took the definite position that he did not produce it.

Plaintiff Gill then testified in rebuttal as the final witness in the case. He looked at the additional copy and testified that he had seen it before, that it bore his signature and that it was a copy of the document produced at the deposition by the previous witness. He had obtained a copy from the attorney at that time. Counsel of record for defendant then made a statement to the court in which he represented that he first saw the document when it was exhibited to him by plaintiffs' counsel and that he had obtained a copy thereof from this source. He stated that he did not know where the document originated.

This additional document does appear to bear the signature of John Gill. Also, the designation "Gaslight Club" has been partly eradicated and "Acoustron Corporation" has been substituted. The document appears to bear a handwritten signature below this, a title of the signatory, and the date 1-17-70. The terms appearing in the document, "one third de-

posit, one third upon completion of installation" have been virtually eradicated leaving only the statement "balance 30 days from completion." Both of these alleged agreements in the record before us are virtually illegible photocopies.

We did not mention these various matters in the opinion for the simple reason that whether plaintiff did or did not himself sign the agreement has no legal significance. Defendant never executed the document so that, as stated in our opinion, there was never any express agreement between these parties. Thus there was, and is, no merit in considering the second duplicate document, its authenticity or its source. Patently, it cannot assist plaintiffs in any manner because on its face it purports to be executed by Acoustron and not by defendant. We adhere to the position stated in our opinion that there never was a contract between plaintiffs and defendant.

The remaining matter in the petition for rehearing is actually a restatement of points heretofore raised in the briefs and covered in the opinion. We have once again reviewed the record and we remain with the conclusion that the judgment appealed from should be reversed. The petition for rehearing is therefore denied.

BURKE, P. J., and SIMON, J., concur.