GUY P. SEABERG *et al.*, Plaintiffs-Appellants, *v.* AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Trustee, *et al.*, Defendants-Appellees.

First District (1st Division) No. 60778

Opinion filed February 2, 1976.

SIMON, J., specially concurring.

Ruttenberg & Ruttenberg, of Chicago (David W. Ruttenberg, of counsel), for appellants.

Haft, Shapiro & Haft, of Chicago (Morris A. Haft and William H. Martay, of counsel), for appellees.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Guy P. Seaberg and Valerie Seaberg his wife (plaintiffs) brought an action against American National Bank & Trust Company of Chicago, not individually but as Trustee under Trust No. 22-22822, and Victor F. Ciardelli, designated in the complaint as its agent, for specific performance of an alleged contract for sale of real estate. Plaintiffs first and then the Trustee filed motions for summary judgment. The court found expressly that there was no genuine issue as to any material fact but denied the motion of plaintiffs and granted summary judgment for defendants, dismissing the suit with prejudice. At the same time, the court denied a motion by plaintiffs for leave to file an amended complaint. Plaintiffs appeal.

The contentions of the respective parties will have more significance if stated after a summary of the facts. We agree that the case presents no genuine issue of material fact. Able counsel for the parties have placed all of the pertinent facts before the court. The real estate involved is commonly referred to as 2201-2207 North Lincoln Avenue, in Chicago. Since sometime in 1969, plaintiffs have occupied a store upon the premises for business purposes. The tenancy has always been evidenced by written leases.

On May 1, 1972, a lease was entered into by the Trustee, as lessor, acting by Ciardelli as "its duly authorized agent" and plaintiffs as lessees. The lease demised premises described as first floor and basement at 2207 North Lincoln Avenue, in Chicago. The lease commenced May 1, 1972, and expired April 30, 1974. Appended to the lease is a rider:

"28. Lessor agrees that if the property being leased hereunder is put up for sale or trade, he shall notify Lessee in the event any potential purchaser submits a firm offer acceptable to Lessor, and shall grant Lessee the first option to purchase or trade for the property at comparable terms, or to refuse that option. In the event of refusal, if the property is not in fact sold or traded to the potential purchaser the option shall remain in full force and effect until such later date when sale or trade is actually effected to a later bidder, or Lessee. Lessee shall have 10 days from time

of notification to accept the first option to purchase said building."

The last sentence of the rider was added by Ciardelli, printed by his own hand. The body of the lease and the rider were signed by Ciardelli without additional designation.

At all pertinent times, legal title to the property was vested in the Trustee. This was done by a deed in trust executed January 14, 1966. The trust is evidenced by an agreement of even date executed by the Trustee and by Ciardelli and his wife, Nancy. The trust agreement described the real estate legally and also as 2205 North Lincoln Avenue, in Chicago. The entire beneficial ownership of the trust is vested jointly in Ciardelli and his wife Nancy, who is not a party to this suit. Sole power of direction is vested in Ciardelli.

The trust agreement is upon the usual type of printed commercial form. It provides that the beneficiaries shall "have the full management of said real estate and control of the selling, renting and handling thereof, and any beneficiary or his or her agent shall handle the rents thereof and the proceeds of any sales of said property * * *. No beneficiaries hereunder shall have any authority to contract for or in the name of the Trustee or to bind the Trustee personally." The agreement provides for payment to the Trustee in accordance with "its regular schedule of fees for making deeds, mortgages, leases and/or other instruments * * *." As such agreements generally do, it provides that "the interest of any beneficiary hereunder shall consist solely of a power of direction to deal with the title to said real estate and to manage and control * * *" the same. It provides that "no beneficiary hereunder at any time shall have any right, title or interest in or to any portion of said real estate as such, either legal or equitable, but only an interest in the earnings, avails and proceeds * * *."

During 1973, Ciardelli had conversations with two persons, one a tenant other than plaintiffs, concerning the possibility of sale of the property. During April of 1973, one of these persons visited Ciardelli and said that he would like to buy the building for $80,000 and would offer that sum. On April 26, 1973, Ciardelli sent a letter to plaintiff Guy P. Seaberg headed "RE: Purchase of 2201 North Lincoln Avenue." The letter, signed by Ciardelli and on his own stationery, was sent by certified mail. It stated:

"Pursuant to the Notice Provision of our Lease, please be advised that I have just received a bona fide offer of $80,000.00 for the sale of the building at 2201 North Lincoln Avenue.

Could you please advise within ten (10) days whether you are in a position to make a bona fide offer to match said amount?"

On May 4, 1973, Plaintiffs both signed and delivered to Ciardelli the following letter:

> "In response to your letter dated 4/26/73, and pursuant to Paragraph 28 of the Rider to our lease, please be advised that we will exercise our first option to purchase the real estate and building at 2201-2207 N. Lincoln Avenue, including adjacent vacant property, for the offered amount of $80,000.00, and are prepared to enter into a Contract for Sale, subject to the usual prorations, limitations, and contingencies, at your earliest convenience."

On May 7, 1973, counsel for plaintiffs sent Ciardelli a letter advising that they had possession of the pertinent documents and that pursuant to their clients' notice they were "prepared to deposit the usual and customary earnest money with a mutually satisfactory escrowee, to effect a consummation of the sale to them." Upon rejection by Ciardelli, plaintiffs filed their suit on May 11, 1973. Later, on May 16, 1973, also by certified mail, Ciardelli sent Guy Seaberg another letter stating:

> "Pursuant to the Notice Provision of our Lease after rejecting the other offers on the building, I just received a new offer of $85,000.00 for the sale of the building at 2201 North Lincoln Avenue.
>
> Could you please advise me within ten days whether you are in a position to make a bona fide offer to match said amount?"

Plaintiffs made no response to this last communication.

Regarding the pleadings, it should be noted that plaintiffs' complaint prayed a decree of specific performance against both defendants. The proposed amended complaint, duly tendered to the court by plaintiffs and rejected, prayed in Count I for the same relief. Count II alleged virtually the same facts and prayed that the court order defendant Ciardelli as beneficiary to cause conveyance of the property by the Trustee to plaintiffs.

It should also be noted that the trial court entered an order directing plaintiffs to pay defendant Ciardelli $175 per month from June 1, 1973, through May 1974 for use and occupancy of the premises providing that such payments were to be without prejudice to the rights of plaintiffs and also that all sums thus paid by plaintiffs were to be credited to them upon the purchase price of the property in the event that they were successful on appeal.

In this court, plaintiffs assert that a beneficiary of a land trust who owns an undivided 100% interest therein combined with sole power of direction may be bound by his agreements concerning the trust property; Ciardelli may be equitably bound by this contract as he has admittedly exceeded the scope of his authority as agent; Ciardelli is estopped to

assert "an improper party seller or his non-agency"; the statute of frauds is not a defense to plaintiffs' action and the lease created a valid and enforceable right of first option which was duly exercised by plaintiffs. Defendants urge that plaintiffs failed to establish existence of a valid contract and even assuming that an offer had been made to them, they did not accept it unconditionally; Ciardelli is not bound by the lease as he was not agent of the Trustee for that purpose and a trust beneficiary cannot contract to sell the trust estate or accept an offer to purchase it; fraud or misrepresentation were not pleaded by plaintiffs and cannot be raised for the first time on appeal; Ciardelli is not bound by the alleged contract; the statute of frauds is a valid defense; the option was an integral part of the lease.

Both parties also discussed in their briefs the issue of liability of plaintiffs to pay a rental for use and occupancy of the premises during pendency of the litigation. Plaintiffs urge that no rental is due after formation of the alleged contract between the parties since they then became vendees in possession. Defendants urge the contrary.

As is readily apparent, all of the contentions made by the parties are divisible so as to form two issues: first, the validity of the lease itself as creating option or first refusal rights in plaintiffs; and, second, whether the correspondence between the parties was a legally sufficient exercise of these option rights by plaintiffs so as to form a binding contract for the sale of real estate.

## I.

■■ A large number of authorities have been cited by the parties concerning the legal results flowing from the lease. Many of these same cases have been listed in a recent opinion of this court. (*Ellis Realty v. Chapelski*, 28 Ill. App. 3d 1008, 329 N.E.2d 370. See footnote 1, 28 Ill. App. 3d 1008, 1010.) We need not analyze each and all of these decisions. It is sufficient to say that we believe the correct proposition of law applicable here is set forth in *Madigan v. Buehr*, 125 Ill. App. 2d 8, 260 N.E.2d 431, and *Feinberg v. Great Atlantic & Pacific Tea Co.*, 131 Ill. App. 2d 1087, 266 N.E.2d 401, *leave to appeal denied*, 45 Ill.2d 591. Based upon these authorities we state the decisive principle as follows: The beneficiary of a conventional land trust, as used in Illinois, may under appropriate circumstances enter into a valid contract to convey title to the trust property. He may do so not as agent of the trustee but in his capacity of beneficiary. This right is limited to situations in which the trust agreement vests in him the sole right to direct the trustee to convey title. Such a contract will be mutually enforceable by the beneficiary as seller and the buyer where it expressly, or by reason-

able construction, provides for exercise by the beneficiary of the power to direct conveyance.

This analysis and conclusion are supported and strikingly illustrated in *House of Realty, Inc. v. Ziff*, 9 Ill. App. 3d 419, 292 N.E.2d 71, cited and relied on by plaintiffs. There, this court held that a real estate sale contract executed by a beneficiary was enforceable. The court based this result on the facts that the contract described the seller as "beneficiary" and she contracted expressly to "cause title to be conveyed." (9 Ill. App. 3d 419, 422.) Both of these elements are entirely lacking from the lease in the case before us. In *Madigan*, the court considered and differentiated *Beilin v. Krenn & Dato*, 350 Ill. 284, 183 N.E. 330, *Burns v. Epstein*, 413 Ill. 476, 109 N.E.2d 774, and *Brannen v. La Salle National Bank*, 18 Ill.2d 116, 163 N.E.2d 476, all cited and relied upon by plaintiffs.

In our opinion this is the guiding theory as set forth in *Madigan* in most exemplary fashion and approved in *Feinberg*. In the case before us we are dealing with an option allegedly granted in a lease. This document does not purport in any sense of the word to provide for or contemplate exercise of the right of the defendant Ciardelli as beneficiary to order the Trustee to convey the property. The lease does not disclose the status of Ciardelli as a beneficiary but is executed by him as agent of the Trustee. Neither the lease nor the rider are executed by the Trustee. Both of these documents purport simply to be signed by defendant Ciardelli as an individual.

Counsel for plaintiffs have made an admirable effort to circumvent this principle. They argue that Ciardelli executed the lease as agent of the Trustee. As shown, the trust agreement specifically provides that Ciardelli has no status or authority to act as agent of the Trustee. Plaintiffs contend that despite this, even assuming the absence of authority, the agent should be held personally bound for that very reason. Plaintiffs cite and rely upon *Zamouski v. Gerrard*, 1 Ill. App. 3d 890, 275 N.E.2d 429. But, as plaintiffs concede, *Zamouski* involved an action against attorneys to recover damages for alleged breach of an oral settlement agreement negotiated by the lawyers in behalf of an insurance company. It is not comparable in any manner to the case at bar.

■■ Plaintiffs' complaint simply alleged that defendant Ciardelli acted as agent of the Trustee in connection with the lease and so described him. The first count of plaintiffs' proposed amended complaint described Ciardelli as agent of the Trustee precisely as did the original complaint. The proposed amended complaint also described Ciardelli as beneficiary but did not allege that there was any agreement of any kind between plaintiffs and Ciardelli for the latter to exercise his right of direction under the trust. It merely prayed for a decree requiring

Ciardelli "to cause" conveyance to plaintiffs. This prayer is totally unsupported by factual allegations in either complaint and is negated by the documentary evidence before the court.

Plaintiffs cannot avail themselves of any theory based upon fraud. There are no facts in any of the pleadings before us which actually allege or attempt to allege a cause of action for fraud. (See *Gill Custom House, Inc. v. Gaslight Club, Inc.,* 28 Ill. App. 3d 1066, 1073, 330 N.E.2d 559.) We do not find in this record any of the essential elements required to create an equitable estoppel. (See *Ellingwood v. Ellingwood,* 25 Ill. App. 3d 587, 591, 323 N.E.2d 571.) We conclude that the lease itself was not sufficient to grant option or first refusal rights to plaintiffs as lessees.

## II.

Assuming validity of the above conclusion, it would follow that plaintiffs had no enforceable option rights under their lease so that the result reached by the trial court should necessarily be affirmed. However, proceeding for completeness upon the assumption that the lease did actually create enforceable option rights, we will next consider whether the correspondence between the parties constituted a sufficient offer of sale by Ciardelli and acceptance by plaintiffs.

It seems to us that the initial letter sent to plaintiffs by Ciardelli on April 26, 1973, constituted a sufficient offer to plaintiffs to proceed in accordance with the option contained in paragraph 28 of the lease. The letter, signed by Ciardelli, was sent by certified mail. It advised plaintiffs that Ciardelli had received "a bona fide offer" for sale of the building. The lease provision is directed to "a firm offer acceptable to lessor." It would seem necessary to consider these words "a firm offer" and "a bona fide offer" as being synonymous. The opening sentence of Ciardelli's letter stated that it was being sent pursuant to the notice provision of the lease. Ciardelli, a member of the bar, would hardly advert to the option provision of the lease unless the offer described in his letter was acceptable to him. If plaintiffs failed to act after receiving this letter, Ciardelli might well have taken the position that their option rights had been waived.

We come to a different result, however, in considering the response made by plaintiffs on May 4, 1973. In the first four lines thereof, plaintiffs directly state that they "will exercise our first option to purchase * * *." However, aside from this, the purported acceptance goes further and states "to purchase the real estate and building at 2201-2207 N. Lincoln Avenue, including adjacent vacant property * * *." In this regard, the purported acceptance far exceeded the scope of the

offer. The offer describes the property as 2201 North Lincoln Avenue. The lease demises premises at 2207 North Lincoln Avenue. Neither document contains any information or specification regarding adjacent vacant property. The location and extent of the vacant property are not fixed. Even more important, the letter goes further and states that plaintiffs were prepared to enter into a contract "subject to the usual prorations, limitations, and contingencies." A mere statement that the contract was to be subject to the usual prorations would amount to no more than the statement of a detail which is customary usage in every real estate sale transaction. However, the following phrase, "limitations and contingencies" is too broad and far-reaching in its possible consequences to be considered as a simple acceptance of the offer. There is virtually no limit to the type of limitations and contingencies which a buyer could possibly insert into a real estate contract which would make the agreement onerous, unfair, impractical or even impossible of performance by the seller.

In *Gaskins v. Walz*, 409 Ill. 40, 97 N.E.2d 798, plaintiff as a lessee exercised an option to purchase contained in his lease. He also requested in his letter that the lessor as seller deliver an abstract brought down to date showing good and merchantable title. The Supreme Court held that this request, added to the exercise of the option, did not create any qualification or condition to the option terms but that the acceptance was "specific, certain and unconditional" and the demand for an abstract was limited to performance of the contract as distinguished from contract provisions. See 409 Ill. 40, 45.

In this regard, the letter from plaintiffs dated May 4, 1973, is in partial compliance with the holding and principle set forth in *Gaskins*. Plaintiffs here stated that they "will" exercise their first option which was unconditional as to content, if not as to time. However, plaintiffs then went far beyond the limits of unconditional acceptance by appending the statement regarding the adjacent vacant property and by stating directly that the contract for sale would be subject to limitations and contingencies.

*Kadansky v. Fickett*, 54 Ill. 2d 14, 294 N.E.2d 262, also supports this view. There, defendants granted plaintiffs an option to purchase real estate. Plaintiffs' attorney sent defendants' attorney a letter in which he stated that his clients "wish to exercise their option to purchase the property described below pursuant to the terms of their Option Contract." (54 Ill. 2d 14, 15.) The letter of acceptance then proceeded to make a statement regarding the agreement of the clients as to a method of payment coupled with an inquiry as to the correctness of this fact.

Citing *Gaskins,* the Supreme Court held that this letter constituted an unconditional acceptance of the option contract which was not negated by the additional language. The court held that this language "asserted no new demand or condition, and it did not imply that the buyers' exercise of the option was conditional upon the sellers' acceptance of new terms of payment." (54 Ill. 2d 14, 16.) As in *Gaskins,* the added language of the unequivocal acceptance in *Kadansky* is directed to performance of the contract as distinguished from *conditions* or substantive provisions of the contract itself.

In *Morris v. Goldthorp,* 390 Ill. 186, 60 N.E.2d 857, Goldthorp and his wife gave Morris an option to purchase real estate for a specified amount with buyer to pay all open special assessments including costs and interest. No statement was made in the option regarding the type of conveyance. Morris attempted to accept the option by a definite written statement that he had decided to exercise it. He also enclosed a warranty deed to be executed by the sellers. The Supreme Court pointed out that execution of this warranty deed would have compelled the sellers to warrant the title against special assessments contrary to the provisions of the option. The court then stated the applicable principle (390 Ill. 186, 195):

> "It is elementary that where one party gives an option to another, the acceptance, to be valid so as to conclude an agreement or contract between the parties, must, in every respect, meet and correspond with the offer, neither falling short of, nor going beyond, the terms proposed, but exactly meeting them at all points and closing with them just as they stand. *Brach v. Matteson,* 298 Ill. 387; *Anglo-American Provision Co. v. Prentiss,* 157 Ill. 506."

■■ In our opinion, the purported acceptance by plaintiffs in the case before us did not meet and correspond with the terms of the option but went far beyond them. Under these circumstances, we must necessarily conclude that the option, assuming its initial validity, was not properly exercised by plaintiffs. See *In re Estate of Girga,* 15 Ill. App. 3d 916, 921, 305 N.E.2d 565, *affirmed,* 60 Ill. 2d 27.

It follows that analysis of each of the issues here presented leads to affirmance of the judgment appealed from. In view of this conclusion plaintiffs are obligated to pay for use and occupancy of the premises.

Judgment affirmed.

BURKE, J., concurs.

Mr. JUSTICE SIMON, specially concurring:

I concur in the portion of the opinion holding that the plaintiffs' acceptance did not correspond with the terms of the option and that they did not properly exercise the option. I, therefore, concur in the conclusion that the judgment should be affirmed.

My concern is with the portion of the court's opinion holding that no valid option ever existed because the lease was not executed in a way which bound the land trustee or the beneficiary. In dealing with that aspect of the appeal, the opinion ably and accurately analyzes the line of Illinois cases setting forth the circumstances under which a beneficiary of a land trust may be bound by leases and contracts to sell real estate. I disagree with the court's opinion, however, because it follows the traditional approach to land trusts which is to view the actual owner separate and apart from the title holder, thus permitting the owner to use the land trust as an escape from obligations he has assumed with respect to his real estate.

The court's opinion points up the artificialities resorted to in dealing with land trusts to mask the realities of the relationship between the trustee holding legal title and the one who has the power to say what should be done with the property. Mr. Ciardelli had the sole power to direct the trustee, and he and his wife were the beneficiaries of the trust. Had Mr. Ciardelli and his wife styled themselves as beneficiaries, signed the lease as beneficiaries and incorporated a provision agreeing to cause title to be conveyed when the option was exercised by the lessee, the option would have been valid under the holding in *House of Realty Inc. v. Ziff* (1973), 9 Ill. App. 3d 419, 292 N.E.2d 71. Because Mr. Ciardelli departed from those formalities by identifying himself instead as "duly authorized agent" for the trustee who was named in the lease, signed the lease in his own name and did not specifically agree to cause title to be transferred, Mr. Ciardelli is excused by the court's opinion from performing an arrangement he entered into with respect to property which he and only he could direct be conveyed to plaintiffs.

Mr. Ciardelli managed the real estate and collected rent from the plaintiffs for several years. He gave them two leases, one in 1969 for a term of 1 year with an option to extend for an additional 15 months at an increased rental and the second in 1972 for a term of 2 years, again with an increased rental and with the option to purchase which gives rise to the controversy between the parties. All of this was with the acquiescence of Mrs. Ciardelli who during the years involved gave her husband full authority to manage the property and to deal with the trustee. Under these circumstances, I regard the land trust as abused

by applying the line of cases that permit Mr. Ciardelli to separate himself from the land trust, cast himself in the role of a stranger to it and in effect use the land trust device to shield himself from his own actions with respect to the property held for his benefit in the land trust. Particularly here I cannot see anything of substance that would have been added to the option had Mr. Ciardelli agreed in it to cause title to be conveyed in view of the provision contained in the trust agreement giving him full authority to direct such a conveyance.