PHILIP FARLEY, Plaintiff-Appellee, *v.* ROOSEVELT MEMORIAL HOSPITAL *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 78-1204

Opinion filed December 27, 1978.

William P. Rosenthal, Robert R. Tepper, Robert I. Berger, and Ross P. Benjamin, all of Chicago, for appellants Hudland Corporation, George McClure, and Alan Sorkin.

Steven L. Pernick, of Chicago, for appellants Roosevelt Memorial Hospital, Dr. Charles R. Kelly, and Dr. Samuel Matlin.

William J. Harte, Ltd., of Chicago (William J. Harte, Edward T. Joyce, and Mary Anne Spellman, of counsel), for appellee.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

This appeal requires us to decide whether the circuit court improvidently entered a preliminary injunction preventing the sale of real estate which was the subject matter of an option to purchase that the defendant Roosevelt Memorial Hospital (the Hospital) had granted to the plaintiff Philip Farley. After the time to exercise the option had expired, the Hospital contracted with defendant Hudland Corporation to sell it the property, and this sale was enjoined by the preliminary injunction which the circuit court entered, and which was designed to preserve the status quo until the issue of a permanent injunction was resolved.

In determining whether the preliminary injunction was properly issued, two questions raised by the defendants must be addressed: first, was the option to purchase the property correctly exercised, thereby creating a contract between the plaintiff and the Hospital? Second, even if the option was exercised, is specific performance of the contract possible when the holder of the legal title to the real estate was not a party to the option or contract? The Hospital argues that because both questions must be answered in the negative, the plaintiff does not have a reasonable likelihood of success on the merits, that is of showing he had a valid contract for purchase of the real estate. Thus, the Hospital contends that the preliminary injunction was erroneously entered. See *McCormick v. Empire Accounts Service, Inc.* (1977), 49 Ill. App. 3d 415, 417, 364 N.E.2d 420.

The option agreement executed by the Hospital as optionor and the plaintiff as optionee provided in its first paragraph:

"In consideration of the sum of $10,000.00, paid by the Optionee to the Optionor, receipt of which is hereby acknowledged, the Optionor hereby grants to the Optionee the exclusive option to

purchase the real property described in Exhibit 1 hereto on the terms and conditions contained in said Real Estate Sale Contract."

An unexecuted real estate sale contract between the plaintiff and the Hospital was attached to the option agreement as Exhibit 1.

The option agreement then stated in two separate paragraphs that it was to be exercised by 10 a.m. on April 26, 1978, by written notice signed by the plaintiff and sent to the Hospital via registered mail prior to the expiration date. Another paragraph provided that the purchase price was $700,000 and that the option consideration ($10,000) was to be credited against the cash payment to be made on closing. The next paragraph stated that if the plaintiff did not exercise the option "as herein provided," the Hospital should retain the $10,000.

Following these provisions, a separate paragraph of the option agreement provided:

"If this option is exercised as herein provided, the optionor [the Hospital] and the optionee [the plaintiff] will immediately sign the Real Estate Sale Contract attached hereto as Exhibit 1."

The following evidence was introduced by the plaintiff on the hearing on his motion: On March 28, 1978, the plaintiff submitted the option agreement and a form of real estate sale contract to the Hospital's representative and invited the Hospital's attorney to make any changes he desired in the form of contract. Three days later the Hospital returned the option agreement to the plaintiff signed and unchanged together with a different form of real estate sale contract which was acceptable to the plaintiff and which was referred to in the option agreement as Exhibit 1. At the time the Hospital revised the form of contract, both it and its attorney knew that two land trusts held legal title to the property and that the beneficial interests had been assigned for collateral purposes, but this information was not incorporated in the form of contract returned to the plaintiff or communicated to him.

Subsequent to executing the option agreement, the plaintiff and the defendant, Dr. Samuel Matlin, one of the Hospital's chief executive officers, had several conversations regarding the option. At one of their meetings Dr. Matlin informed the plaintiff that another person had offered the Hospital $125,000 more than the option price. Dr. Matlin offered to split the profit with the plaintiff if he would give up his option rights, but the plaintiff declined.

The plaintiff and his attorney testified that on April 24, 1978, the plaintiff prepared to notify the Hospital of his exercise of the option. Because the attorney who represented him in preparing the option agreement was not available, the plaintiff consulted the attorney's associate. The attorney he consulted drafted a notice dated April 24, 1978, and reading as follows:

"Roosevelt Memorial Hospital
426 West Wisconsin Street
Chicago, Illinois 60614                    VIA REGISTERED MAIL
Attn: Charles R. Kelly, M.D.              VIA MESSENGER

Dear Dr. Kelly:

In the option agreement dated March 27, 1978, by and between Roosevelt Memorial Hospital, as optionor, and Philip Farley, as optionee, you granted me the right to purchase certain real estate. In accordance with the agreement, I hereby elect to exercise said option. I am enclosing two signed copies of the real estate contract called for under the option agreement. Please sign and return one copy to me. Also enclosed is a copy of the option agreement.

Very truly yours,
Philip Farley."

The attorney, who had no prior involvement in the negotiations, enclosed with the notice two copies of a prior form of contract he found in the file of the attorney who had drafted the option agreement. The plaintiff signed the letter notice of the exercise of the option and the incorrect contract without reading the contract form. The letter, the incorrect contract and a copy of the option agreement reached the Hospital prior to the date fixed for the expiration of the option.

The contract forwarded to the Hospital varied in form from the one attached to the option agreement in material respects. Between the date plaintiff sent his notice to the Hospital and the date on which it was to be exercised, the plaintiff tried to reach the Hospital's attorney by telephone several times; he left his name but the attorney did not return his calls. On May 2, 1978, the Hospital informed the plaintiff that the option agreement had not been validly exercised because the purported exercise constituted a counteroffer. On the same day the Hospital also agreed to sell the real estate to Hudland for $825,000.

■■ ■ The plaintiff does not dispute the basic principle of contract law which the Hospital emphasizes that for the exercise of an option to be valid, the acceptance must be in the precise terms of the offer contained in the option. (*Morris v. Goldthorp* (1945), 390 Ill. 186, 191, 60 N.E.2d 857.) The parties agree that a purported acceptance which changes the terms of an option or that varies, alters or adds conditions to the offer set forth in an option constitutes a counteroffer rather than an acceptance. Thus, the Hospital argues that the form of real estate contract the plaintiff enclosed with his letter exercising the option was a condition of the exercise.

Because that contract varied in substantial respects from the form of contract attached to the option agreement as Exhibit 1, the Hospital characterizes the document which plaintiff contends exercised the option as a counteroffer rather than an acceptance.

We are not persuaded by the Hospital's argument. The offer is set forth in the option agreement. It stipulated that to exercise the option and accept the offer, plaintiff was required to send written notice of the exercise signed by him and delivered to the Hospital by registered mail prior to the time and date specified in the option. The plaintiff's April 24 letter fully complied with these requirements, and we believe that when the plaintiff transmitted it to the Hospital, he exercised the option. The operative feature of the offer contained in the option agreement was the giving of notice to the Hospital that the plaintiff exercised the option. When given, such notice constituted an affirmation that the parties were bound by the provisions of the form of real estate sale contract attached to the option agreement as Exhibit 1 whether or not Exhibit 1 was executed.

The option agreement required neither that the contract be executed as a condition precedent to the acceptance of the option nor that it was to be executed concurrently with the exercise of the option. Instead, the option provided only that if it was exercised, the plaintiff and the Hospital would immediately sign the form of contract. As in *Welsh v. Jakstas* (1948), 401 Ill. 288, 298, 82 N.E.2d 53, where the option agreement provided that upon its exercise, the purchaser "shall immediately pay * * *," and the court held that payment was not an essential condition to the acceptance, in this case we do not view the execution of the contract as an ingredient of the exercise of the option. On the contrary, the execution of Exhibit 1 was neither necessary to complete the transaction nor to bind the parties to its terms.

By paragraph 1 of the option agreement, quoted above, the parties expressly acknowledged that all the terms and conditions of the purchase were set out in Exhibit 1. Thus, the option agreement was self-contained; within its four corners it incorporated, without the need to refer to an executed copy of Exhibit 1, the complete terms and conditions of the sale. The agreement to purchase became operative upon the exercise of the option. Nothing material to the transaction was added by the requirement that following the exercise of the option, the parties would execute the real estate sale contract because they already had indicated their approval and acceptance of all its terms and conditions when they signed the option agreement and the plaintiff exercised it. Therefore, the act of executing the contract was, as the court in *Welsh* characterized the immediate payment called for by the option, "* * * a matter pertaining

to the performance of the contract and not to its creation." *Welsh*, at 298.

Another way of looking at the provision calling for the execution of Exhibit 1 is that it was nothing more than a ministerial act to be accomplished subsequent to the plaintiff's acceptance, for the purpose of record-keeping. It neither added to nor subtracted from the promises and covenants each party had already in writing obligated himself to perform at the point when the option was exercised.

Upon the plaintiff notifying the Hospital that he exercised the option, he thereby accepted the Hospital's offer to sell the real estate on the terms and conditions set forth in Exhibit 1, and an enforcible contract came into being. Contrary to the Hospital's contention, the plaintiff did not change the "deal"; the understanding was set forth in Exhibit 1, and it became fixed as the arrangement between the parties when the plaintiff notified the Hospital of its exercise of the option. In *Welsh*, the court observed:

> "The law enters into and forms a part of every contract, and a contract is sufficiently certain and definite to be enforcible if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do. We are of the opinion the plain common-sense meaning of the option should prevail." (*Welsh*, at 294-95.)

From the time that the plaintiff notified the Hospital he exercised the option, the parties, and if necessary a court, could ascertain what the parties had agreed to do.

■■ And in forwarding to the Hospital a signed copy of an incorrect form, the plaintiff did not alter his acceptance of the terms and conditions contained in Exhibit 1. In his April 24 letter, the plaintiff referred to the real estate contract called for under the option agreement and it was obvious to the Hospital that the document it received with that letter did not conform to Exhibit 1. Under the facts of this case, the plaintiff's enclosure of the wrong draft of contract was of no significance, since the contract accompanying the letter apparently was signed as the result of confusion and mistake, and enclosed only erroneously. While the established rule is that where an option is granted, the exercise must in every respect meet and correspond with the offer, that rule should not be so inflexibly applied that it cannot accommodate an acceptance which mirrors the offer, but where a ministerial procedure was not carried out because of the mistake of one of the parties. The observation of the supreme court in *In re Estate of Frayser* (1948), 401 Ill. 364, 371-72, 82 N.E.2d 633, is relevant:

> "The object of courts of equity, as well as courts of law, is the enforcement of contracts rather than their evasion, and where a

valid contract exists for a sale of land a court of equity will enforce it as a matter of right where it was fairly and understandingly entered into and no circumstances of oppression and fraud appear." (*Frayser*, at 371-72.)

If the plaintiff can establish that he did not intentionally enclose the wrong form of contract, he cannot be charged with oppression or fraud, and, in that event, he would have a reasonable likelihood of establishing that his exercise of the option was valid.

The second reason the Hospital advances for denying the preliminary injunction is that even if the option agreement was properly exercised, it is unenforcible because legal title to the real estate was in a land trust and the trustee was not a party to the option agreement. The Hospital argues that for this reason the plaintiff cannot have specific performance of the Hospital's agreement to sell the property, and a preliminary injunction should not have issued.

The trust agreements provide that the Hospital as beneficiary has the power of direction to deal with the title of the real estate. The trustee has agreed to convey title to the real estate and execute and deliver deeds when authorized to do so by the beneficiary. The beneficial owner has control of the sale of the property for the trustee has acknowledged that it will deal with the real estate in the manner the Hospital directs. Exhibit 1 to the option agreement provides that the hospital would convey title or cause it to be conveyed to the plaintiff.

The trend of decisions in Illinois appears to be expanding the authority of beneficiaries to contract to sell real estate owned in a land trust, particularly where enforcement of the contract is sought by a purchaser who was not informed by the seller that his status was that of beneficiary under a land trust. The plaintiff's principal reliance is on *Rizakos v. Kekos* (1977), 56 Ill. App. 3d 404, 371 N.E.2d 896, the most recent case decided by this court where a purchaser sought to enforce a contract to sell real estate executed by a beneficiary of a land trust who failed to disclose to the purchaser how his ownership interest was held. On the authority of *Rizakos*, we reject the Hospital's contention that specific performance of the contract is impossible because of the failure to include the land trustee as a party.

In *Rizakos*, this court reversed the circuit court's order striking the complaint and dismissing the action. It held that (i) by agreeing in the sales contract that he would cause title to be conveyed to the buyer, as the Hospital also did here, the seller obligated himself to give all directions to the trustee necessary to effectuate a transfer of title; (ii) the seller was estopped from asserting as defenses to the action that his status was that of beneficiary rather than fee owner or that legal title was in a land trust,

matters which he did not disclose to the purchaser; and (iii) the buyer had no affirmative obligation to search out who was in title prior to signing the sales contract.

The facts in the case before us are almost identical with those in *Rizakos*, and the distinctions the Hospital has attempted to draw between the cases are not significant. The Hospital agreed to a contract provision similar to the one on which the court placed emphasis in *Rizakos*; the provision obligated the Hospital to cause title to be conveyed. The Hospital seizes, however, upon a provision in the *Rizakos* contract that called for the seller to deliver a "Warranty or Trustee's Deed" claiming this distinguishes *Rizakos* from this case, where Exhibit 1 calls only for a "warranty deed." The Hospital's argument is that the additional words "Trustee's Deed" were relied upon in *Rizakos* to indicate that the seller had contracted to exercise his right to cause the trustee to convey the property.

The distinction suggested by the Hospital is not persuasive. As long as the Hospital bound itself to cause title to be conveyed, it was bound to direct the trustee to convey by any instrument the trustee would sign. If the only deed the Hospital could supply was a trustee's deed, rather than a warranty deed, the plaintiff could either accept that type of deed or take the position that the Hospital was in default. Moreover, in revising the real estate sale contract, the Hospital could have inserted the words "Trustee's Deed" if that was the only deed it could provide, and it should not now be given an advantage because of its own omission. See *Ellis Realty v. Chapelski* (1975), 28 Ill. App. 3d 1008, 1012, 329 N.E.2d 370.

The Hospital also states that in *Rizakos* the purchaser had no hint he was not dealing with the fee owner, while here the option agreement which the plaintiff's attorney prepared described the Hospital as "the owner or agent for the owner." However, that the attorney employed the words "agent for the owner" does not mean he knew that ownership was in a land trust or that the Hospital's status was that of beneficiary rather than owner or authorized agent of the owner.

The court in *Rizakos* concluded that the sellers "*deliberately* failed to disclose that they were beneficiaries." The Hospital argues this presents a substantial deviation from the facts in this case, contending there is no suggestion here that it *intentionally* withheld the identity of the legal title holder from the plaintiff. Yet, when the plaintiff paid the Hospital $10,000 for the option both parties must have intended that the resulting option would bind the owner of the real estate. Thus, equity should place upon the Hospital the duty of disclosing to the plaintiff all matters which would make the option something more than a piece of paper the Hospital was free to walk away from at will. Any failure on the part of the Hospital to

make such disclosures is the equivalent of a deliberate withholding of relevant information, and should in equity estop the Hospital from relying upon such matters to abdicate its agreement. This is particularly so in the light of Dr. Matlin's testimony that he told the plaintiff that the Hospital was the owner of the property. While the Hospital argues that its attorney informed the plaintiff or his lawyer that the property was held in trust, this only creates an issue of fact to be resolved ultimately by the trial court.

■■ Relying on *Lowenberg v. Booth* (1928), 330 Ill. 548, 162 N.E. 191, the Hospital further contends that it had no duty to inform the plaintiff of its status as a beneficiary because the plaintiff, by checking the public records, could have learned that by himself, and, therefore, estoppel theories are not applicable. The Hospital urges us to follow *Lowenberg* and ignore *Rizakos*. Our analysis discloses that the court in *Lowenberg* stated that there was no evidence that the person whom the plaintiff sought to estop had acquiesced in a real estate contract entered into by her husband. Here, though, the Hospital clearly acquiesced in the option agreement. Because the facts in *Rizakos* more closely parallel those in the case before us than the facts in *Lowenberg* do, we are satisfied to rest on the conclusion reached in *Rizakos* that the plaintiff had no affirmative obligation to search title prior to paying for the option, and the Hospital is estopped from raising its status as a beneficiary. See *Rizakos*, at 407.

■■ The Hospital's last contention is that the Hospital had no power to direct the trustee because it had assigned this power, along with its beneficial interest, as collateral to secure an indebtedness it had incurred. We believe, however, that by paying off the indebtedness out of the proceeds of the purchase price, the Hospital would have the power of direction restored to it. And if any creditor resisted receiving accelerated payment, provisions could be made to deposit the amount owing to that creditor in an escrow, so that his eventual payment was assured, and the conveyance to the purchaser could be postponed until payment was made. In any event, if the Hospital were unable to perform its agreement to cause title to be conveyed because of its prior collateral assignments, the plaintiff could choose to take whatever assurances the Hospital could provide that it would receive title in the future. Still, the decision as to whether the plaintiff was willing to wait for title the Hospital may not have been able to deliver until its indebtedness was paid should have been his, not the Hospital's. And, we believe also that the Hospital is in a poor position to advance this argument inasmuch as the collateral assignee, at the Hospital's request, joined in the May 2, 1978, sale to Hudland.

We, therefore, conclude that the preliminary injunction designed to restrain the Hospital from disposing of its real estate until a trial of

plaintiff's claim that he had a valid contract to purchase was not improvidently issued, and the judgment of the circuit court is affirmed.

Judgment affirmed.

McNAMARA and JIGANTI, JJ., concur.