THE VILLAGE OF ORLAND PARK *et al.*, Plaintiffs-Appellants, v. FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHICAGO *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 84—1609

Opinion filed July 23, 1985.

Raymond W. Pieper, of Orland Park, for appellant Village of Orland Park.

Klein, Thorpe & Jenkins, Ltd., of Chicago, for appellant School District No. 135.

Liebling & Hauselman, of Chicago (Martin F. Hauselman, Patricia O'Brien Norum, and Todd D. Feldman, of counsel), for appellee First Federal Savings and Loan Association of Chicago.

JUSTICE HARTMAN delivered the opinion of the court:

This appeal proceeds from a Cook County Circuit Court order striking and dismissing plaintiffs' amended complaint on defendant's motion. The issues presented here involve the legal sufficiency of the pleadings and will therefore require a somewhat extended description.

A five-count complaint was filed jointly by the village of Orland Park (village) and Cook County School District No. 135 (school district), seeking to enforce the provisions of a preannexation agreement (agreement) against First Federal Savings and Loan Association of Chicago (First Federal).[1] First Federal's motion to strike and dismiss

_____

[1] Now known as Citicorp Savings of Illinois.

under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—615) (Code) was granted and the village and school district within the 30 days allowed filed a five-count, verified amended complaint, to which was attached 11 exhibits. Ford City Bank and Trust Company as Trustee under Trust No. 2145 (Ford City) and Lamplighter Construction Company (Lamplighter) were named as additional defendants. The village also attached a copy of the agreement to the amended complaint, signed by the village, Ford City and Lamplighter by November 17, 1978. The agreement was recorded on June 29, 1982. It is entitled "Pre-Annexation Agreement." Within its preamble it purported to be written pursuant to "Section 11—15,1—1 [sic]," et seq. of the Illinois Municipal Code (Ill. Rev. Stat. 1977, ch. 24, par. 11—15.1—1 (Municipal Code).

Count I of the amended complaint alleged that the village performed all the terms and conditions of the agreement, including: adopting the requisite annexation ordinance; notifying the Orland fire protection district, public library district, board of township trustees and township commissioner of highways of the annexation; adopting R3 zoning classification for the subject property, including zoning map classification and plat approval; assisting defendant developers in obtaining approvals of the metropolitan sanitary district and other governmental bodies; granting defendant developers permission to connect to the village water and sewer system; and approving plans and specifications for public improvements to be built by defendant developers. The village also alleged that First Federal became owner of the subject property on January 27, 1982, pursuant to a sheriff's deed in a foreclosure case. Count I further alleged that the agreement required construction of certain village approved public improvements, which defendants have not completed, including two streets, street pavement and final lift on other streets, sidewalks, storm sewers, detention pond, and installation of street lights as described in exhibits attached to the amended complaint. The real estate was asserted to have been included in the plat of subdivision of the real estate entitled, "Lamplighter," which was approved by the village authorities on May 14, 1979, and signed July 23, 1979.

Count I also alleged that: Ford City and Lamplighter were to furnish a certificate or irrevocable letter of credit to unqualifiedly guarantee the completion of the involvements in question within two years from the date of approval of the final plat of subdivision; First National Bank of Oak Lawn (First National) issued two such letters of credit, one in 1979 and one in 1980; shortly before expiration of the second letter of credit, the village served notices of default upon

Lamplighter and Ford City, on March 9, 1981, and March 7, 1981, respectively, as required in said letter; on April 6, 1981, the village passed a resolution in accordance with the terms of the second letter of credit, served the same on First National, and said letter was extended through April 12, 1982, but on April 8, 1982, First National refused to honor two sight drafts of the second letter of credit presented by the village. The village asserted that for it to complete the improvements in question would require eliminating or reducing essential village services because money for the costs of these improvements are not part of the budget allocation, and increasing taxes for the citizens of the village to pay for such improvements would be inequitable since the benefits of the improvements would inure primarily to the land which was the subject of the agreement.

In count II of its amended complaint, the village alleged that: defendants failed to convey certain real estate and pay taxes to the village as required by the agreement and were obligated to pay $9,450 to the school district by delivering the money to the village for forwarding, all within a time limit no later than 4½ years from the date of the agreement, but failed to do so; and the transfer of the real estate and payment of monies were part of the consideration for execution of the agreement by the village.

In count III, the village alleged that: the agreement required the payment of $50,175 for water and sewer connection privileges under paragraph 6A, of which only $30,105 has been paid, leaving $20,070 still due and owing; the agreement provided that all monies pursuant to paragraph 6A shall be paid no later than 4½ years from the date of the execution of the agreement, or March 11, 1983; the agreement in paragraph 6G provided that the developers will reimburse the village for its attorney fees incurred for "all other services that will be required to be rendered relative to [the] subject property"; the village has pending a bill from a law firm for $665.50 for legal services and obtaining easements for the property and for matters relating to the review of the proposed plat of subdivision; the village has received a bill from a law firm in the amount of $2,964 for representation of the village from March of 1982 until the summer of 1983 regarding legal services in attempting to settle this annexation matter; defendants have failed to pay the village the sum of $3,629.50 for its attorney fees; and the village has sustained damages in the amount of $23,699.50.

Count IV set forth the village's requested entry of a judgment in the amount of $20,070 which is the balance of the $50,175 originally due the village under paragraph 6A of the agreement and, in the

event that the judgment is not paid, so much of the real estate should be sold as is necessary to satisfy the judgment.

In count V, the school district requested entry of a money judgment in its favor for $9,450, which it alleged defendants agreed to pay to the village for the school district's use under the agreement.

First Federal filed another section 2—615 motion to strike and dismiss the amended complaint, which the circuit court granted. The village and school district pursue this appeal.

Although First Federal maintains at the threshold of its responses that the village and school district failed to preserve their arguments for appeal, citing *Burdin v. Jefferson Trust & Savings Bank* (1971), 133 Ill. App. 2d 703, 706-07, 269 N.E.2d 340 and *Williams v. City of Gibson* (1970), 129 Ill. App. 2d 431, 433, 263 N.E.2d 138, First Federal overlooks the village and school district's responses to its motion to dismiss the amended complaint, which essentially raised the arguments in the circuit court now presented on appeal. These arguments, therefore, will be considered on their merits.

The village and school district assert that counts I and II of the amended complaint state causes of action for specific performance and were dismissed improperly by the circuit court because the terms of the annexation agreement sought to be enforced are sufficiently clear (*Chicago Investment Corp. v. Dolins* (1981), 93 Ill. App. 3d 971, 974, 418 N.E.2d 59), and they have alleged the satisfaction of all conditions precedent, pursuant to Supreme Court Rule 133(c) (87 Ill. 2d R. 133(c)).

■■ Preannexation agreements, such as the one at issue, whereby a municipality agrees with the record owners of real estate to annex the owner's land, and freeze zoning fees and ordinances in return for contributions of land and money, are authorized by section 11—15.1—2 of the Municipal Code. Pursuant to section 11—15.1—4 of the Municipal Code, similar agreements have been judicially specifically enforced. (*Elm Lawn Cemetery Co. v. City of Northlake* (1968), 94 Ill. App. 2d 387, 237 N.E.2d 345; *Long Grove Country Club Estates, Inc. v. Anderson* (1977), 47 Ill. App. 3d 449, 362 N.E.2d 374; *Union National Bank v. Village of Glenwood* (1976), 38 Ill. App. 3d 469, 348 N.E.2d 226.) The preannexation agreement here, between the village, Ford City and Lamplighter, for the construction of public improvements, conveyance of land, and payment of funds to the school district, is clearly one contemplated and authorized by the statute and cases. Accepting as true for purposes of review all well-pleaded facts and fair inferences which may be drawn from them (*Wilczynski v. Goodman* (1979), 73 Ill. App. 3d 51, 391 N.E.2d 479), counts I and II

of the amended complaint state causes of action and the order dismissing them must be reversed.

Authorities relied upon by First Federal (*Bissett v. Gooch* (1980), 87 Ill. App. 3d 1132, 409 N.E.2d 515; *Yonan v. Oak Park Federal Savings & Loan Association* (1975), 27 Ill. App. 3d 967, 326 N.E.2d 773; *Besinger v. National Tea Co.* (1966), 75 Ill. App. 2d 395, 221 N.E.2d 156) are altogether inapposite, since none of them involved annexation agreements such as the one at bar, nor did they proceed under statutory authority, as here. The authorization of preannexation agreements by statute, such as section 11–15.1–1, serves to further important governmental purposes, such as the encouragement of expanding urban areas and to do so uniformly, economically, efficiently and fairly, with optimum provisions made for the establishment of land use controls and necessary municipal improvements including streets, water, sewer systems, schools, parks, and similar installations. This approach also discourages fragmentation and proliferation of special districts. Additional positive effects of such agreements include controls over health, sanitation, fire prevention and police protection, which are vital to governing communities. (See Comment, 1973 U. Ill. L. F. 582.) The statutory authority contained in section 11–15.1–4 of the Municipal Code to enforce preannexation agreements and to compel the performance to which the parties agreed thereby stands upon a foundation entirely apart from the private agreements sought to be enforced in the cases cited by First Federal.

Preannexation agreements are also made binding upon successor owners of land under section 11–15.1–4 of the Municipal Code. In *Union National Bank v. Village of Glenwood* (1976), 38 Ill. App. 3d 469, 348 N.E.2d 226, the successor property owner was held bound by his predecessor's preannexation agreement. In *Meegan v. Village of Tinley Park* (1972), 52 Ill. 2d 354, 359, 288 N.E.2d 423, our supreme court held that any party to such an agreement, including successor owners, were empowered to enforce or compel performance of such an agreement within the statutory period. The foregoing authorities demonstrate that the instant agreement is binding upon First Federal as a successor owner.

■ The case cited by First Federal to the contrary, *Fidelity Trust Co. of New York v. Brooklyn Properties Corp.* (1930), 229 App. Div. 544, 242 N.Y.S. 111, for the proposition that a purchaser at a foreclosure sale is not a "successor owner," does not persuade. Considerations of responsibility to construct or pay for public improvements in a case such as this cannot pivot upon how a party succeeds to ownership, since the public and private benefits and burdens affect

both the community and the subject property regardless of how that succession took place. Particularly is this true in the present instance, wherein the village adopted ordinances annexing the subject property and applying the necessary zoning to the subject property. First Federal, as successor owner, has the right to accept the benefits of these ordinances, but it is also required to take notice of them and be bound by them in any event. (*Hope v. City of Alton* (1905), 214 Ill. 102, 105, 73 N.E. 406; *C.D. Gammon Co. v. Standard Trust & Savings Bank* (1927), 327 Ill. 489, 493, 158 N.E. 810.) First Federal's assertion that the agreement here was not recorded until June 1982, five months after its foreclosure in February 1982, therefore also fails, since, in 1979, the ordinances generated by the agreement were allegedly adopted, before the foreclosure took place. No questions have been raised as to the regularity or validity of such ordinances.

■ Arguments articulated by First Federal as to the fairness of the agreement and the failure of the village to join the First National Bank of Oak Lawn as a necessary party because of its refusal to honor the balance of payouts due under its letters of credit do not alter the circumstances of the controversy. Public hearings were held on the agreement in the present case. If any questions of fairness could be said to remain, they are matters to be raised and proven at trial. (See *Farley v. Roosevelt Memorial Hospital* (1978), 67 Ill. App. 3d 700, 705-06, 384 N.E.2d 1352; *Lannon v. Lamps* (1977), 53 Ill. App. 3d 145, 148, 368 N.E.2d 196.) Where joinder problems arise in a case such as this, the Code explicitly provides in section 2—407 (Ill. Rev. Stat. 1983, ch. 110, par. 2—407) that "[n]o action shall be dismissed for *** nonjoinder of necessary parties without first affording reasonable opportunity to add them as parties." The proper remedy is to order the missing party to be added. (*Horwath v. Parker* (1979), 72 Ill. App. 3d 128, 134, 390 N.E.2d 72; *Midwest Bank & Trust Co. v. Village of Lakewood* (1983), 113 Ill. App. 3d 962, 973, 447 N.E.2d 1358.) The circuit court's dismissal on these grounds also must be reversed.

■ In its motion to dismiss, First Federal raised as defenses the doctrines of *laches*, estoppel, waiver and unclean hands. The village argues that these defenses require pleading and proof and should not have been decided on the present section 2—615 motion to dismiss. We agree. The mere passage of time does not constitute *laches*, and the party asserting that doctrine must demonstrate prejudice. (*Biggs v. Health & Hospitals Governing Com.* (1977), 55 Ill. App. 3d 501, 507, 370 N.E.2d 1150.) *Laches* is sparingly applied against public bodies. (*Hickey v. Illinois Central R.R. Co.* (1966), 35 Ill. 2d 427, 448, 220 N.E.2d 415, *cert. denied* (1967), 386 U.S. 1000, 18 L. Ed. 2d 353,

87 S. Ct. 1302.) An affirmative legislative act must induce proven substantial reliance in order to apply estoppel (*County of Cook v. Patka* (1980), 85 Ill. App. 3d 5, 13, 405 N.E.2d 1376), and waiver requires the demonstrated intentional relinquishment of a known right (*Braden v. Weinert* (1981), 97 Ill. App. 3d 929, 937, 423 N.E.2d 1326). The unclean hands doctrine requires the evidentiary consideration of a party's intent. *Jaffe Commercial Finance Co. v. Harris* (1983), 119 Ill. App. 3d 136, 140-41, 456 N.E.2d 224.

Applying the foregoing rules to the instant case, there were no requisite showings of prejudice, affirmative legislative action, relinquishment of a known right, or bad intent. To the contrary, the village alleged that it sought and received the letters of credit to insure completion of the projects as provided for in the agreement as early as June 12, 1979, and a replacement letter on January 31, 1980, within seven months after the agreement was signed and acknowledged, November 17, 1978. Payouts on the letters were made until April 8, 1982, when the letters were not honored. The village and First Federal allegedly carried on negotiations until May of 1983, during which time the village asserted its rights and demonstrated its intent to have the public improvement projects completed. We note also that such an agreement may be valid and binding for a period not exceeding 20 years. (Ill. Rev. Stat., 1984 Supp., ch. 24, par. 11−15.1−1.) First Federal's motion does not prove prejudice, since the pleadings, accepted as true on review, show that First Federal had adequate means for knowing the true facts. Because the defenses of *laches*, waiver, estoppel and unclean hands were merely set forth in the motion to dismiss without proof, they improperly formed the basis of the circuit court's dismissal, and that order must be reversed for these reasons as well.

■ First Federal also claims that the amended complaint was deficient because it did not allege facts demonstrating that the village had no adequate remedy at law. (*Schmitt v. King* (1924), 234 Ill. App. 335, 337.) Instead, it points out that the amended complaint includes the portion of the agreement providing that Ford City and Lamplighter were to furnish an irrevocable letter of credit to guarantee the completion of public improvements, but that First National refused to honor sight drafts of the letter, for which the village may obtain money damages. The fact that money damages may also be available does not preclude a party from enforcing other terms of a preannexation agreement under section 11−15.1−4 of the Municipal Code. This was implicit in *City of Shelbyville v. Shelbyville Restorium, Inc.* (1983), 96 Ill. 2d 457, 451 N.E.2d 874, in which our supreme court

with approval referred to the municipality's right to seek partial relief in damages and other relief in the form of compelling the construction of streets under the annexation agreement there being considered. The presence of a monetary remedy in addition to the enforcement provisions contained in section 11—15.1—4 of the Municipal Code cannot be deemed a sufficient basis upon which to dismiss the amended complaint. It is of more than passing interest that the legislature amended section 11—15.1—4 in 1971 by substituting the words "by civil action" in enforcing or compelling performance of an agreement for the words "either in law or in equity." The dismissal order must be reversed for this reason in addition to those previously mentioned.

■ Counts III and V also stated causes of action at law and were improperly dismissed by the circuit court. Each count sufficiently alleged the necessary elements of a cause of action for breach of contract: (1) the existence of an operative contract; (2) facts indicating a breach of the contract; (3) plaintiff's performance of its duties under the contract; and (4) damages. (*Martin-Trigona v. Bloomington Federal Savings & Loan Association* (1981), 101 Ill. App. 3d 943, 428 N.E.2d 1028.) We have discussed the inapplicability of the defenses of *laches*, waiver, estoppel and unclean hands with respect to counts I and II; that discussion is equally applicable here. Further, the facts alleged in count III adequately apprised First Federal of the contractual basis and nature of the claims for attorney fees (*cf. Schriner v. Peters* (1891), 39 Ill. App. 309), some of which may be continuing, and should not have been dismissed for the failure to allege a demand therefor. In the absence of a demand for attorney fees, fixed by contract for a particular date, a reasonable time governs. (See *Pescaglia v. Gianessi* (1973), 9 Ill. App. 3d 582, 295 N.E.2d 148.) The dismissal of counts III and V was in error and must be reversed.

■ The village's last argument on appeal is that count IV states a cause of action for foreclosure of a lien for monies due under section 6A of the agreement and should not have been dismissed by the circuit court. The agreement provides under section 6L that "[t]he sums of money payable under Sub-Paragraph A shall be, until paid, a lien on the real property" in the amount of the unpaid balance, and that such a lien is to be subordinate only to any land acquisition loan or construction development loan of any developer of the subject property. There is no affirmative indication in the record of the type of loan which First Federal foreclosed and, thus, no apparent defect in count IV's claim for foreclosure.

First Federal insists that the allegations in the amended complaint permit the inference that it became the owner of the subject

530

real estate through foreclosure of a construction development loan to Ford City and Lamplighter and, therefore, its interest is superior to the village's lien. Further, First Federal maintains, the village's lien amounts to an improper collateral attack on the foreclosure proceeding whereby First Federal took its title. Finally, First Federal asserts that the grounds for dismissal which it raised concerning the other counts in the village's complaint are also applicable to count IV.

The issue of superiority of liens not having been affirmatively raised can be resolved at trial. As to other defenses raised, the same reasoning applied to preceding counts and to count V in this opinion applies with equal force here. The dismissal of count IV, therefore, was in error as well and must be reversed.

For the foregoing reasons, the order dismissing plaintiff's amended complaint must be reversed and the cause remanded for further pleading and trial.

Reversed and remanded.

PERLIN and BILANDIC, JJ., concur.