HONG SIK IN, Plaintiff-Appellant, v. KIYOKO CHENG *et al.*, Defendants (Affiliated Bank *et al.*, Defendants-Appellees).

First District (5th Division)   No. 1—90—0516

Opinion filed November 8, 1991.—Modified on denial of rehearing July 31, 1992.

R.S. Maione, of R.S. Maione & Associates, of Chicago, for appellant.

Susan E. Woods and Stanley M. Cahn, both of Chicago, for appellee Affiliated Bank, North Shore National.

Stotis, Chionis, Craven & Baird, of Chicago, for appellee Hicks, Burton & Associates, Ltd.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff, Hong Sik In, filed an action to quiet title to resolve a dispute over the parties' competing rights in a parcel of commercial property. At trial, the parties entered an agreed statement of facts pursuant to which the trial judge, after assessing the various transactions through which the parties claimed their rights, held that plaintiff had no real property rights in the subject property. Therefore, the trial judge dismissed defendants-appellees Affiliated Bank, North Shore National and Hicks, Burton & Associates, Ltd. The trial judge also entered a finding under Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), and further ordered that the plaintiff could pursue a claim for money damages in the law division against the remaining defendant, Kiyoko Cheng. Plaintiff appealed. In our initial opinion we held that plaintiff, who acquired her rights through one of the beneficiaries of the land trust, could not prevail over the rights of a holder of a subsequently acquired interest in the real property. In reaching our disposition, we refrained from applying an exception to the rule which precludes beneficiaries of a land trust from

effectively conveying the real property held in the trust. We have reconsidered this case in light of the inequities to plaintiff and the peculiar facts contained in the record. We now believe that the proper course is to reverse and remand this case for further proceedings.

Reversed and remanded.

We begin with a statement of the facts as they appeared in our initial opinion. The subject property is located at 3342-44 West Foster Avenue in Chicago. In 1976, defendant Kiyoko Cheng and her husband, as legal title holders, conveyed the subject property to an Illinois land trust, naming the La Salle National Bank as trustee and reserving to themselves the sole beneficial interest in the trust. The trust agreement provided, among other things, that the trustee had full power and authority to sell and convey the trust property.

In 1981, Kiyoko Cheng as seller and plaintiff (Hong Sik In) as buyer entered into an installment contract for the sale of the property for $100,000. Cheng was represented by an attorney, Philip Igoe. The plaintiff, who had just arrived in this country from Korea, had someone assist her but she did not know if he was an attorney. The signed installment contract did not account for the interests of Cheng's husband or their trustee.

The installment contract was recorded in the office of the Cook County recorder of deeds on July 28, 1981. The contract required plaintiff to pay Cheng $30,000 as down payment, $771 per month for two years, and the balance of $70,000 on or before September 1, 1984. Plaintiff paid the $30,000 down payment.

In 1982, Cheng and plaintiff drafted a novation to the contract because Cheng was "in need of additional money which [was] not presently due." The novation provided that, if plaintiff paid another $20,000 toward the balance, the due date for the final payment would be extended beyond 1984. Plaintiff paid the $20,000. However, the novation was not recorded. In the trial court, two versions of the novation were produced thereby creating a factual dispute whether the due date was extended to 1986 or 1991.

In 1986, plaintiff leased the premises to Lee Shin (tenant), who renovated the property into a Korean restaurant with an adjacent apartment. Tenant continued to pay rent to the plaintiff until the time of this litigation.

Defendant-appellee Hicks, Burton & Associates, Ltd. (Hicks Corporation), a real estate investment company, consisted of three principals: George Hicks, Ben Burton, and Darryl Wilkes. The three men incorporated their business in 1986 with the assistance of the above-mentioned attorney, Philip Igoe.

In 1987, Hicks Corporation arranged for the purchase of the subject property from Cheng for $60,000. Even though George Hicks, Igoe and Cheng were all social acquaintances, in his deposition Hicks denied that he knew that Igoe represented Cheng in her 1981 installment contract with plaintiff. Hicks testified that he approached Cheng about buying the property and she proposed a $60,000 sale price. Cheng also told Hicks that she had sold the property to the plaintiff by an installment contract but plaintiff was not making the required payments. Cheng explained to Hicks that she could not afford to foreclose on the contract and wanted to sell the property quickly. She gave Hicks a copy of the installment contract and the novation. After reading the novation, Hicks concluded that plaintiff's contract had expired because the original due date had passed and because the novation was not enforceable.

However, Hicks further testified that he spoke with the plaintiff and the tenant prior to purchasing the property from Cheng. In his deposition, Hicks admitted that plaintiff told him that she owned the building. Plaintiff's tenant also told him that the plaintiff owned the building and that the building was paid for.

Nonetheless, Hicks contacted Igoe to discuss the prospect of Hicks Corporation purchasing the property. Igoe told him that he had represented Cheng in the past; that another party (plaintiff) claimed an interest in the property; but that Hicks Corporation could still obtain possession to the property. Hicks admitted that while planning for the purchase of the property he and his partners considered the possible litigation costs in view of plaintiff's adverse claim.

Hicks next contacted defendant-appellee Affiliated Bank, North Shore National (Affiliated Bank). Hicks testified that he gave Joan Bassak, an officer with Affiliated Bank, a copy of the installment contract and novation that he received from Cheng. Affiliated Bank agreed to extend to Hicks Corporation a $45,000 mortgage loan for the purchase of the property.

Igoe supervised the closing on the property and another attorney from Igoe's office suite represented Cheng. Hicks Corporation made an $18,000 down payment to Cheng and paid the balance of the purchase price with a check from Affiliated Bank. La Salle National Bank as trustee of the 1976 Illinois land trust then conveyed the property to another trust with Affiliated Bank as trustee and with Hicks Corporation as beneficiary. Igoe was designated legal counsel for Affiliated Bank as trustee. The trust agreement provided, however, that the beneficiary had full power and authority to sell and convey the trust property.

After completing the transaction, Hicks Corporation served a five-day notice on plaintiff's tenant and then filed an eviction action based on

the tenant's failure to pay Hicks Corporation rent. Plaintiff filed motions to enjoin the eviction action and to quiet title to the property. Then, Hicks Corporation negotiated a contract with a third party for the sale of the property for $95,000. Plaintiff, in turn, filed motions requesting the court to enjoin the sale of the property and to remove Igoe as attorney for both Hicks Corporation and Affiliated Bank as trustee. Igoe withdrew as counsel in both capacities.

In March 1988, Affiliated Bank as mortgagor filed a motion to dismiss plaintiff's motion to quiet title. There is no indication that Hicks Corporation joined this motion. The motion argued that the recordation of the 1981 installment contract between Cheng and plaintiff was "wild" because it was outside the chain of title; moreover, plaintiff's rights under the installment contract terminated in 1984 because the (1991) novation was not recorded. On July 28, 1988, Judge Roger Kiley denied the motion.

Affiliated Bank, as mortgagor, filed its answer and affirmative defense to plaintiff's motion to quiet title on August 30. Following Judge Kiley's retirement, the case was reassigned to Judge Reynolds.

On April 20, 1989, Hicks Corporation filed a motion for summary judgment arguing that plaintiff violated her contract with Cheng because, among other things, plaintiff was late in her periodic payments and wrote checks which were returned marked "not sufficient funds." Judge Reynolds denied this motion and continued the case.

In view of trial, the parties submitted a statement of "Agreed Facts" to the court. The stipulation recognized the 1981 installment contract between Cheng and plaintiff and the existence of both versions of a novation (neither of which was recorded). The stipulation also recognized the 1987 sale to Hicks Corporation. It stated further that Hicks Corporation "was aware" that the plaintiff claimed an interest in the property and that plaintiff had a tenant on the premises, but that if George Hicks were called to testify, he would state that he believed plaintiff's interest in the property had expired in 1986. If Joan Bassak of Affiliated Bank were called to testify, she would state that, although the bank was aware of the installment contract, "neither she, nor the bank, had notice of the novations."

The stipulation framed two issues: (1) whether the 1991 novation was a binding contract between plaintiff and Cheng that acted to extend the installment contract; and (2) whether the 1991 novation, if valid, is enforceable against Hicks Corporation and/or Affiliated Bank. Two footnotes appear in the stipulation. The first footnote provided that plaintiff paid a $30,000 down payment and another $20,000 under a "Novation Agreement" and if plaintiff were called as a witness she would state

that she made all payments under the installment contract prior to and after the purchase of the property by Hicks Corporation. The second footnote provided that neither Cheng nor Hicks Corporation sent the plaintiff a notice of intent to forfeit the installment contract. Finally, the stipulation did not mention the existence of the 1976 Illinois land trust.

After reading the stipulation, Judge Reynolds commented in court:

"I will admit to the attorneys that my heart goes out to [plaintiff], and I think that she has been very badly treated, but I don't think that she has any claim on the property now according to the recorder's office. Regarding notice by inquiry, I don't think that—since she was never an owner, I don't think that Mr. Hicks had any duty to find out who she was."

Judge Reynolds then entered the order dismissing Hicks Corporation and Affiliated Bank. The first three paragraphs of the order recount the agreed facts. The paragraphs that follow specifically provided:

"4. This court finds that [plaintiff] has no equitable interest in the subject property.

5. The court further finds that [plaintiff] has no equitable interest superior to the Affiliated Bank, North Shore.

6. That Hicks, Burton & Associates and Affiliated Bank, North Shore are deemed bona fide purchasers for value based on the fact that neither version of the extension agreement was recorded, thereby extinguishing [plaintiff's] equitable interest in the property.

7. Consequently, the court finds that the interest of Hicks, Burton & Associates and Affiliated Bank, North Shore passes free and clear of any interest of [plaintiff]."

The court denied plaintiff's post-trial motion for reconsideration but stayed the effect of the order pending appeal, thereby halting a disposition of the property.

In their appellate briefs, the parties argued extensively whether Hicks Corporation and Affiliated Bank were *bona fide* purchasers who took the property in good faith, for value, and without notice of the plaintiff's rights in the property.

OPINION

█▌ It has been long established that the trustee of an Illinois land trust holds all rights to the real property, both legal and equitable, while a beneficiary of an Illinois land trust holds rights in personal property only. (*Chicago Federal Savings & Loan Association v. Cacciatore* (1962), 25 Ill. 2d 535, 185 N.E.2d 670.) Therefore, as a general rule, courts have maintained that a beneficiary cannot convey an interest in the real prop-

erty held by the trust. The courts, however, began carving out exceptions to this general rule. In our initial opinion, we cited *Rizakos v. Kekos* (1977), 56 Ill. App. 3d 404, 371 N.E.2d 896, which provided that a purchaser may successfully enforce a real estate contract entered into by a beneficiary of the land trust. The *Rizakos* court limited its rationale to those cases in which the trust agreement vested in the beneficiary the sole right to direct the trustee to convey title, and where the real estate contract contained a promise to convey title or "cause title to be conveyed" and a promise to deliver a "trustees deed." *Rizakos*, 56 Ill. App. 3d at 406, 371 N.E.2d at 898.

After *Rizakos*, the courts expanded the circumstances pursuant to which a beneficiary could effectively convey the real property. One court stated:

> "The trend of decisions in Illinois appears to be expanding the authority of beneficiaries to contract to sell real estate owned in a land trust, particularly where enforcement of the contract is sought by a purchaser who was not informed by the seller that his status was that of beneficiary under a land trust." (*Farley v. Roosevelt Memorial Hospital* (1978), 67 Ill. App. 3d 700, 706, 384 N.E.2d 1352, 1358.)

We are now relying on this trend in deciding to reverse and remand this case. We are also mindful of the present record, which shows that the plaintiff was "very badly treated."

■ In *Farley*, the plaintiff sought to enforce a real estate contract executed by the beneficiary of the land trust. The appellate court held that the contract was enforceable even though it did not contain a promise to deliver a "trustees deed." The court explained that the beneficiary should not obtain an advantage because the language was omitted. (*Farley*, 67 Ill. App. 3d 700, 384 N.E.2d 1352.) Here, we also are persuaded that the parties (appellees herein) should not be able to obtain an advantage because the real estate contract did not contain the language "trustees deed" or "cause title to be conveyed." We believe that this construction of the contract is appropriate, especially in light of the fact that Philip Igoe, who later represented the Hicks Corporation, was responsible for the installment contract between plaintiff and the Chengs.

In the same vein, we are persuaded that the parties should not be able to take advantage of the language in the 1976 trust agreement which vested power in the trustee, La Salle National Bank, to convey title. We note that plaintiff was not informed that the property was held in trust and therefore did not have an opportunity to check the language in the trust agreement. Nor is there any evidence that La Salle National Bank as trustee would have opposed the sale to plaintiff. Therefore, we

do not believe that the trust agreement precludes enforcement of the real estate contract.

Finally, we are aware that Mr. Cheng, as co-beneficiary, did not sign the real estate contract. As a rule, when a land trust has two or more beneficiaries, a contract to sell the trust property is not enforceable unless all such beneficiaries consent to the sale. (*Emerich v. Leviton* (1983), 117 Ill. App. 3d 832, 454 N.E.2d 45.) From the evidence presented, we believe that Mr. Cheng fully consented to the sale. In sum, we believe that plaintiff acquired a right in the real property pursuant to the real estate contract.

■■ The issue remains as to the priority of rights between plaintiff and appellees as subsequent purchasers. Having determined that plaintiff had an interest in the real property, the rationale of the trial court finding in favor of appellees must fail. The trial court stated "since she was never an owner, I don't think that Mr. Hicks had any duty to find out who she was." We hold now that the appellees did have a duty to find out who she was. The appellees, in turn, have presented various arguments providing that they have priority as *bona fide* purchasers. It is not necessary that we address all of these arguments because they also are premised upon the view that plaintiff did not have rights in the real property. We add that there is strong evidence, aside from any questions concerning the novations, that appellees had actual notice of plaintiff's claim against the real property. In sum, appellees do not have priority because plaintiff had a right in the real property and the appellees were not *bona fide* purchasers.

In closing, we again voice our agreement with the trial judge, who stated that the plaintiff was "very badly treated." From the record presented it appears that attorney Philip Igoe may have transgressed upon the rules of ethics governing attorneys by his dual role in representing the Chengs and subsequently the Hicks Corporation in its purchase of the subject property. We leave the determination of whether there were violations of the rules of ethics governing attorneys to the Attorney Registration and Disciplinary Commission.

Reversed and remanded.

McNULTY, P.J., and GORDON, J., concur.