No. 3-05-0428

filed June 29, 2006.

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2006

| | | |
|---|---|---|
| MICHAEL FINNIN, D.J. McPHERSON and DAVID WRIGHT, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, Knox County, Illinois, |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 02-L-74 |
| BOB LINDSAY, INC., d/b/a/ BOB LINDSAY HONDA-TOYOTA, and ROBERT LINDSAY, JR., Individually, | ) ) ) ) | Honorable David L. Vancil, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the opinion of the court:
_____

Plaintiffs Michael Finnin, D.J. McPherson and David Wright filed a breach of contract complaint against defendant Robert Lindsay, Jr., d/b/a Bob Lindsay Honda-Toyota (dealership), claiming that Lindsay failed to honor a written agreement to sell the dealership to plaintiffs. Both parties moved for summary judgment. The trial court found that plaintiffs' modifications to defendant's offer constituted a counteroffer which defendant did not accept. The court granted summary judgment in Lindsay's favor. We affirm. In March of 2002, plaintiffs, Michael Finnin, D.J. McPherson and David Wright, approached

defendant, Bob Lindsay, about selling his Honda-Toyota dealership. Negotiations continued over the next few months, and the agreement was eventually reduced to writing. Both parties then made several suggestions, modifications, and counter-proposals to the draft.

On August 13, 2002, a few final changes to the agreement were discussed between counsel for both parties. On August 13 or 14, defense counsel's legal assistant sent a letter to plaintiffs' attorney. Enclosed was a revised agreement for the sale of the dealership's stock which reflected the necessary changes. The copy was signed by Lindsay and contained all the corrections previously discussed.

Upon receipt of the agreement, plaintiffs' attorney noticed two errors which did not conform to the parties' intent. The parties previously agreed that plaintiffs would pay $1.1 million for the stock. The purchase price provision of the agreement stated the correct amount. However, exhibit A to the agreement still stated that the purchase price was $700,000. Second, the agreement made reference to another agreement for the sale of goodwill between the parties that had since been incorporated into the agreement for the sale of stock.

Plaintiffs' attorney contacted defendant's attorneys, and they discussed the errors. On August 19, 2002, Lindsay's attorney wrote to plaintiffs' counsel, suggesting that plaintiffs' attorney send the draft back and he would send plaintiffs a corrected version of the agreement. Plaintiffs' counsel did not return the contract.

On the morning of August 22, Lindsay telephoned Finnin and informed him that he had received another offer from a third party. During the conversation, Lindsay told Finnin that he intended to sell the car dealership to the interested party. Finnin stated that he did

2

not want to "stand in [Lindsay's] way" but wanted to contact his partners before he made a decision. Finnin telephoned McPherson and Wright to inform them of the situation. Finnin also spoke with plaintiffs' attorney who recommended that the three partners sign the agreement and return it. Finnin called Lindsay and told him that plaintiffs intended to go through with the deal. That same day, plaintiffs' attorney made the previously discussed changes to the written agreement by striking out the incorrect purchase price and inserting the correct amount in "Exhibit A" and by removing all references to the "agreement for the sale of goodwill" on page 14. Plaintiffs then initialed the corrections, signed the agreement, and returned the contract to Lindsay's attorney. Lindsay refused to sell the dealership to plaintiffs.

Plaintiffs filed a breach of contract complaint. During his deposition, defendant's attorney stated that the changes were "minor" and "basically corrected the written agreement to conform with the intent of the parties."

At the summary judgment hearing, Lindsay argued that no contract was ever formed between the parties because the plaintiffs made "material" modifications to the offer. Plaintiffs claimed that the modifications were not significant or material changes to the agreement, but rather corrections of clerical mistakes. Since the changes were consistent with the parties' intent, plaintiffs argued that a contract had been formed. In the alternative, plaintiffs claimed that the strict compliance rule should not be applied because the Uniform Commercial Code (UCC) (810 ILCS 5/2-101 et seq. (West 2002)) applied to the agreement. The trial court held that the agreement signed by Lindsay was an offer and that plaintiffs' corrections constituted a counteroffer. The court granted summary judgment in favor of Lindsay.

ANALYSIS

I. Strict Compliance

On appeal, plaintiffs claim that the trial court erred in granting summary judgment in favor of Lindsay. Plaintiffs maintain that the modifications made after Lindsay signed the agreement were simply corrections to errors in the writing and did not change the terms agreed to by the parties; thus, a valid contract was formed.

It is well settled that in order to constitute a contract by offer and acceptance, the acceptance must conform exactly to the offer. Whitelaw v. Brady, 3 Ill. 2d 583 (1954); see also Magee v. Garreau, 332 Ill. App. 3d 1070 (2002), appeal denied 202 Ill. 2d 613. Under Illinois contract law, an acceptance requiring any modification or change in terms constitutes a rejection of the original offer and becomes a counteroffer that must be accepted by the original offeror before a valid contract is formed. Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429 (1993); see also Milani v. Proesel, 15 Ill. 2d 423 (1959); Whitelaw, 3 Ill. 2d 583; Worley v. Holding Corp., 348 Ill. 420 (1932).

In the seminal case of Whitelaw v. Brady, our supreme court held that any changes to an offer, even minor changes, constitute a counteroffer rather than an acceptance. In 1950, decedent Ramm owned an apartment building. Shortly before his death he made an offer to Whitelaw to purchase the property. After consideration, Whitelaw decided to accept the offer. He typed in the date for performance in the blank provided by Ramm and typed in the date of acceptance as "12/26/51." Ramm died that same day. Whitelaw later changed the acceptance date to "12/26/50" to correspond to the actual date he signed the offer. The supreme court held that a valid contract had not been created because the acceptance did not conform unequivocally to Ramm's offer. Whitelaw, 3 Ill. 2d 583.

4

Illinois' strict compliance rule of law was recently noted and applied by the Seventh Circuit in Venture Associates Corp. v. Zenith Data Systems, Corp. In that case, plaintiff and defendant were attempting to negotiate the sale of defendant's subsidiary company. The parties exchanged several drafts of a proposed agreement. After months of negotiations, the plaintiff returned a proposed purchase agreement "with minor, non-substantive changes on it in writing." The defendant seller eventually refused to proceed, and the sale was never completed. The plaintiff filed suit in federal court, alleging that the parties had entered into a binding agreement when it returned the agreement with only minor changes. The district court granted defendant's motion to dismiss. Venture Associates Corp., 987 F.2d 429.

On appeal, the Seventh Circuit held that the plaintiff's conduct did not create a binding contract between the parties. The court concluded:

"Because Illinois law demands that an acceptance comply strictly with the terms of the offer (citations omitted), [Plaintiff's] modifications of [defendant's] proposed agreement, however minor, precluded formation of a contract at that point. Indeed, [plaintiff's] changes created a counteroffer which [defendant] never accepted."

Venture Associates Corp., 987 F.2d at 432.

Here, plaintiffs argue that they made only non-substantive, typographical modifications to the proposed agreement for the sale of stock. We agree that plaintiffs' changes were minor and that they apparently conformed to the agreement of the parties. Nevertheless, Illinois case law clearly mandates that any modification, however slight, prevents the creation of a valid contract. Plaintiffs attempt to correct or modify the terms of

5

the agreement formed a counteroffer that Lindsay refused to accept.

We recognize that many courts in other jurisdictions disagree with our disposition. See 17 Am. Jur. 2d Contracts §87, at 112 (1964). Other states have found that immaterial or minor differences or variances between the offer and acceptance do not prevent the formation of a contract. Those courts have concluded that a modification of an offer constitutes a counteroffer only if the modification is a material one. See Hollywood Fantasy Corp. v. Gabor, 151 F.3d 203 (5th Cir. 1998) (applying Texas law); State Department of Transportation v. Providence & Worcester R. Co., 674 A.2d 1239 (R.I. 1996); Wallerius v. Hare, 200 Kan. 578, 438 P.2d 65 (1968); Richardson v. Greensboro Warehouse & Storage Co., 223 N.C. 344, 26 S.E.2d 897 (1943); and Foster v. West Publishing Co., 77 Okla. 114, 186 P. 1083 (1920). Although the material modification analysis may be more appropriately applied to the facts of this case, Illinois has yet to adopt that rule.

Plaintiffs argue that the rule of strict compliance is not meant to allow contracting parties to escape their obligations under the contract due to a mistake by the parties. In support of their position, plaintiffs cite Farley v. Roosevelt Memorial Hospital, 67 Ill. App. 3d 700 (1978).

In Farley, the parties entered into an option agreement which granted the buyer the right to exercise an option to purchase real estate. The buyer later executed the option by signing a different real estate contract form which did not conform to the contract form attached to the option agreement. Defendant refused to honor the sale, informing the purchaser that the option had not been validly exercised due to the incorrect form. In construing the terms of the option agreement, the appellate court stated that the option agreement required only that the purchaser provide a timely option notice to the seller. The

6

court found that the terms of the agreement did not require the purchaser to include with the notice a signed copy of the real estate agreement. The court concluded that "[w]hile the established rule is that where an option is granted, the exercise must in every respect meet and correspond with the offer, that rule should not be so inflexibly applied that it cannot accommodate an acceptance which mirrors the offer, but where a ministerial procedure was not carried out because of the mistake of one of the parties." Farley, 67 Ill. App. 3d at 705. Therefore, the purchaser properly exercised the option to purchase the property. Farley, 67 Ill. App. 3d 700.

Here, whether a valid agreement exists between the parties is still in dispute. Unlike the court in Farley, we are not operating under a valid contract and trying to determine if the parties' actions conformed with the contractual requirements to which they agreed. Plaintiffs made, albeit slight, changes to Lindsay's offer. Even assuming these changes were agreed to by the parties, the acceptance did not correspond with the offer in every aspect as required under Illinois law. Plaintiffs' corrections constituted a rejection of the initial offer and a simultaneous counteroffer. See D'Agostino, 205 Ill. App. 3d 898. As previously determined, a valid agreement was not created. Therefore, the trial court properly granted summary judgment in favor of Lindsay.

## II. Uniform Commercial Code (UCC)

In the alterative, plaintiffs argue that the trial court erred in concluding that the agreement is not controlled by the UCC. Plaintiffs claim that the sale of shares of stock in a corporation is governed by the UCC; under the UCC, an acceptance need not strictly comply with an offer to form a valid contract.

Article 2 of the UCC governs the sale of goods between merchants. Section 104 of

7

the UCC defines "merchants" as "a person who deals in goods of the kind." 810 ILCS 5/2-104 (West 2002). Section 2-105 defines "goods" as "all things, including specially manufactured goods, which are movable at the time of identification in a contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action." 810 ILCS 5/2-105(1) (West 2002). Investment securities are excluded from the definition of goods, unless such application is "sensible and the situation involved is not covered by [Article 8]." 810 ILCS 5/2-105(1) (comment 1) (West 2002).

Plaintiffs and defendant are not merchants as defined by the UCC, and investment securities are expressly excluded from the definition of goods unless it is sensible to define them as such. In this case, the sale of the stock of Lindsay's closely held corporation doing business as a car dealership was a one time complex transaction. The application of the UCC was intended to encourage the continuous transaction of goods that occur on a daily basis in the marketplace. See 810 ILCS 5/2-207 (West 2002) (battle of the forms provision). It is not sensible, nor is it necessary, to apply those rules to the lengthy, ongoing negotiations that occurred here. See Kottis v. Cerilli, 612 A.2d 661 (R.I. 1992).

## CONCLUSION

The judgment of the circuit court of Knox County is affirmed.

Affirmed.

SCHMIDT, PJ., and O'BRIEN, J., concurring.