# Illinois Official Reports

## Appellate Court

---

### *King v. Rossi*, 2020 IL App (3d) 190086

---

| | |
|---|---|
| Appellate Court Caption | DEBORAH KING, Plaintiff-Appellant, v. JAY R. ROSSI, CAROL A. ROSSI, BRADFORD L. KLETT, CAROL A. KLETT, LAKE WILDWOOD ASSOCIATION, INC., OTHER OWNERS and LIENHOLDERS UNKNOWN, UNKNOWN NECESSARY PARTIES, and NONRECORD CLAIMANTS, Defendants-Appellees (Bradford L. Klett and Carol A. Klett, Defendants and Third-Party Plaintiffs-Appellees, v. Jim Maloof Realty, Inc., Third-Party Defendant-Appellee). |
| District & No. | Third District<br>No. 3-19-0086 |
| Filed | April 2, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Marshall County, No. 15-L-15; the Hon. Thomas A. Keith and the Hon. Stephen A. Kouri, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Jacob J. Frost, of Spring Valley, for appellant.<br><br>James P. Lawson, of Mackinaw, for appellees Jay Rossi and Carol Rossi. |

Lane G. Alster, of Elias, Meginnes & Seghetti, P.C., of Peoria, for appellees Bradford L. Klett and Carol A. Klett.

Craig L. Unrath and James J. Manning, of Heyl, Royster, Voelker & Allen, of Peoria, for appellee Jim Maloof Realty, Inc.

No brief filed for other appellee.

Panel   JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Presiding Justice Lytton and Justice McDade concurred in the judgment and opinion.

**OPINION**

¶ 1   The plaintiff appealed a trial court order granting partial summary judgment in favor of the defendants in an action to enforce a right of first refusal.

¶ 2           I. BACKGROUND

¶ 3   The plaintiff, Deborah King, lived on Lot 117 in the Lake Wildwood Development. The lots in Lake Wildwood were subject to certain restrictive covenants, including the right of first refusal when a neighboring lot owner sells. The defendants, Jay and Carol Rossi, owned Lots 141 and 116 in Lake Wildwood, which were back-to-back lots. On February 28, 2015, the Rossis listed Lots 141 and 116 for sale with a broker, Joanne Slepicka. Slepicka was an independent contractor who contracted with the third-party defendant, Jim Maloof Realty, Inc. (Maloof Realty). The Rossis received an offer to purchase both lots from the defendant buyers, Bradford and Carol Klett, and transferred both lots to the Kletts by warranty deed dated July 17, 2015. On December 23, 2015, King brought suit, ultimately filing a six-count second amended complaint against the defendants Lake Wildwood Association, Inc. (association), the Rossis, the Kletts, and unnamed others, contending that she had a right of first refusal as to the sale that was not honored. The Kletts filed a third-party complaint against Maloof Realty for indemnification.

¶ 4   Relevant to this appeal, counts I and II alleged that the Rossis breached article 12 of the Amended and Restated Declaration of Restrictive Covenants for the Lake Wildwood Association, Inc. (restrictive covenants), entitled "Rights of First Refusal," in that they did not offer to sell Lot 116 to King at the terms contained in the offer from the Kletts. King requested that the Kletts be ordered to convey the lots back to the Rossis and that the Rossis provide King with a copy of the offer and the opportunity to match the terms of the offer. Count VI alleged breach of contract by the Rossis and sought damages.

¶ 5   The Kletts and Rossis filed motions for partial summary judgment, and King filed a cross-motion for summary judgment. It was undisputed that the Rossis owned Lots 141 and

116, which were situated back to back, and that King's Lot 117 was adjacent to Lot 116. According to the plat of survey attached to King's complaint, there was a garage situated near Clubhouse Drive on Lot 141. The house was also on Lot 141, at the back of the lot near Lot 116. The front of the house on Lot 141 faced Lot 116 and Lake Wildwood Drive. Lot 116 was unimproved, although it had a driveway leading to the house on Lot 141.

¶ 6　　On February 28, 2015, the Rossis contracted with Maloof Realty to sell their residence, Lots 116 and 141 combined. King was aware of the listing by May 2015 but did not believe it was worth the listed price of $149,900. On June 7, 2015, the Rossis received an offer from the Kletts to purchase Lots 141 and 116, collectively known as 141 Clubhouse Drive, for a price of $146,000. The Rossis accepted the offer the same day. After receiving the offer from the Kletts, on June 9, 2015, Slepicka provided notice of the offer to the owners of the lot to the right of Lot 141, Lot 140, of their right of first refusal, using a form entitled "Rights of First Refusal Form Lake Wildwood." The owners of Lot 140 checked the "no" option on the form, signed the form, and returned it to Slepicka. Slepicka also provided notice to the association, which owned the property on the other side of Lot 141. The association also declined to exercise its right. Slepicka did not give written notice to the owners of the lots adjacent to Lot 116 prior to the July 17, 2015, closing. At the closing, the Rossis executed and delivered a warranty deed to Lots 141 and 116, PIN 06-18-177-023, commonly known as 141 Clubhouse Drive.

¶ 7　　After the closing but prior to July 24, 2015, King learned of the closing. King had her husband, David Campbell, contact the association and speak with Joan Boyer, the manager of the association, regarding the property. Thereafter, on July 24, 2015, Slepicka delivered the "Rights of First Refusal Form Lake Wildwood" to King. It included a note that apologized for the mix-up and informed King of the offer for Lots 141 and 116 as a package deal. According to Slepicka, she also informed the Kletts that there might be a problem with regard to the right of first refusal and that the transaction might need to be unwound. After receiving the form, King had her husband contact Slepicka's office to attempt to arrange a walkthrough of the home situated on Lot 141. Slepicka's office declined to arrange the walkthrough, informing Campbell that the transaction had already closed. In a written "Response to Right of First Refusal," sent on August 1, 2015, King acknowledged receipt of first refusal to Lot 116 and noted that she had the right of first refusal to that lot. She took issue with the packaging of Lots 116 and 141 and demanded the right to purchase Lot 116 at its fair market value. King describes this letter as a compromise solution to her right of first refusal, since the house was already sold, she was not allowed a walkthrough, and she did not have a copy of the Kletts' offer. There was no response to King's August 1 letter, and she filed suit on December 23, 2015.

¶ 8　　The trial court granted summary judgment in favor of the Kletts on count I and in favor of the Rossis on counts II and VI. It denied King's motion for summary judgment. The trial court found no material breach of the restrictive covenants in that King was offered a *bona fide* opportunity to match the terms and price of the offer made by the Kletts. The trial court further found that King never made such an offer but rather sought to force the sale of Lot 116 at fair market value, which was a different parcel of real estate with different terms for a different price. The trial court held that, by responding as she did, King knowingly, intentionally, and expressly waived her right of first refusal, and she could not withdraw the waiver.

¶ 9 The trial court's order of December 25, 2017, entered summary judgment as to three counts of King's six-count second amended complaint. The order contained a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason for delaying appeal. King filed a timely motion to reconsider on January 23, 2018, which was granted on April 25, 2018. The trial court then vacated the April order by order dated January 25, 2019. The plaintiff filed her notice of appeal on February 15, 2019.

¶ 10                                                    II. ANALYSIS

¶ 11 The claims at issue in this appeal, subject to the summary judgment order, were the claims that alleged violations of article 12 of the association's restrictive covenants, specifically, the right of first refusal. King argues that the trial court erred in finding that her August 1, 2015, letter waived her right of first refusal, contending that the notice she received did not comply with article 12 of the association's restrictive covenants. The Kletts and the Rossis contend that King was offered the opportunity to match the offer to purchase Lots 116 and 141 but declined to exercise her right of first refusal. The Rossis further contend that King has never alleged her readiness or ability to match the offer. We review *de novo* an order on summary judgment. *Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001).

¶ 12 Section 12.01 of the association's restrictive covenants provides:

> "Whenever the owner of any residential lot in the Development shall receive a *bona fide* offer to purchase said lot which is acceptable to such owner, said owner shall then offer to sell said lot at the price and on the terms contained in such *bona fide* offer, first to the owner of the lot on the right of the prospective seller's lot, and next to the owner of the lot on the left of the prospective seller's lot, and finally to the Association or its assigns. Such offerings shall be made successively and in writing. Each of said offerees shall have ten (10) days after receipt of such offering within which to accept or refuse such offer. If all of said offerees refuse to purchase said lot at the price and on the terms proposed by said owner, said owner shall be free, subject to the limitations contained in Paragraph 9.01 of these Restrictions requiring the purchaser to have been approved for membership in the Property Owners Association to sell said lot to the party who shall have made said *bona fide* offer at the price and on the terms as aforesaid. The 'lot on the right,' for purposes of this Article 12, shall be the next lot on one's right hand as one faces the rear of one's own lot."

¶ 13 A right of first refusal is a preemptive right in that it is a condition precedent to the sale of property. *Kellner v. Bartman*, 250 Ill. App. 3d 1030, 1034 (1993). A right of first refusal differs from an option in that the holder of the right of first refusal cannot force the sale of property at a stipulated price; the right of first refusal does not arise until the grantor notifies the holder of the right of an offer or contract by a third party. *Id.*

¶ 14 To determine the extent of King's right of first refusal, we look to the terms of the source of that right: the association's restrictive covenants. As noted above, section 12.01 of the restrictive covenants requires that an offer be made to the neighboring lot owners "to sell said lot at the price and on the terms contained in such *bona fide* offer." King was notified that an offer had been made for both lots 116 and 141, for a purchase price of $146,000, and that the terms were "cash." King contends that this notice was insufficient because she did not receive a copy of the contract, the form erroneously indicated that it was a cash deal, and the

- 4 -

form did not reference various contingencies and the inclusion of some personal property in the sale.

¶ 15     While acknowledging the unusual posture, in that the sale of the Kletts had already closed, the trial court found that the late notice to King was sufficient for her to exercise her right of first refusal, *i.e.*, she could still exercise her right of first refusal. King received the association's form notice, which described the property to be sold and the price, and provided that King had 10 days in which to respond. A right of first refusal need not specify every term; it is sufficient as long as the terms can be determined so that the holder of the right has the opportunity to meet the material terms and conditions of the third-party offer. *Id.* at 1035. The association's restrictive covenants did not contain a provision requiring that a copy of the third party's offer be provided to the neighboring property owners. See *Thompson v. Gordon*, 241 Ill. 2d 428, 449 (2011) ("a court cannot alter, change or modify existing terms of a contract").

¶ 16     We find that the notice provided to King contained the material terms sufficient for her to exercise her right of first refusal. The notice provided King with notice of the price, the lot numbers, and the terms. Rather than seeking more information about the Kletts' offer, King responded with a letter that unequivocally requested a different offer: Lot 116 at fair market value. King had the information that she needed to match the terms in an offer. Any further terms in the Kletts' offer were not material to the sale. Instead of making an offer, or at least expressing an intent and seeking additional information, King very clearly indicated that she was not interested in meeting the material terms of the Kletts' offer. By refusing the offer, and proposing different terms, King was essentially making a counteroffer and declining to exercise her right of first refusal. See *Finnin v. Bob Lindsay, Inc.*, 366 Ill. App. 3d 546, 548 (2006) (any modification of terms of an offer constitutes a rejection of the original offer and becomes a counteroffer).

¶ 17     The parties, and the trial court, discuss King's response in terms of a waiver of King's right of first refusal. We find that King's response can be more accurately described as a counteroffer. The counteroffer contained different terms, so the Rossis were under no obligation to accept it. There is no dispute that the Rossis sought to sell both Lots 116 and 141 and that is what was the subject of the offer from the Kletts. The trial court also found that King declined to match the offer: she expressed no interest in purchasing both lots for $146,000. Since we review the court's judgment, not its reasoning, we find that the trial court correctly held that no genuine issue of material fact existed and that partial summary judgment was properly granted on counts I, II, and VI. *Morningside North Apartments I, LLC v. 1000 N. La Salle, LLC*, 2017 IL App (1st) 162274, ¶ 10.

¶ 18                      III. CONCLUSION

¶ 19     The judgment of the circuit court of Marshall County is affirmed.

¶ 20     Affirmed.